GREG JOHN, Appellant, *v.* DOUGLAS COUNTY SCHOOL DISTRICT, a Political Subdivision of the State of Nevada; TOM MORGAN, an Individual; KATHERINE MILNER, an Individual; GARY DIEDRICH, an Individual; and MARTY SWISHER, an Individual, Respondents.

No. 48101

November 25, 2009

219 P.3d 1276

*Jeffrey A. Dickerson*, Reno, for Appellant.

*Erickson Thorpe & Swainston, Ltd.*, and *Ann M. Alexander* and *Rebecca Bruch*, Reno, for Respondents.

## OPINION

By the Court, GIBBONS, J.:

This case arises out of an employment discrimination lawsuit. Appellant Greg John was a security officer for the Douglas County School District (DCSD). Other staff members of the school district alleged that John engaged in both unprofessional conduct and sexual harassment. Following the school district's investigation, John was suspended. John appealed the suspension under the collective bargaining agreement between the school district and his union, but the suspension was upheld. Later, John filed an Equal Employment Opportunity Commission (EEOC) complaint against the school district, but the EEOC did not find any violations. After the EEOC dismissed John's complaint, he filed an employment discrimination lawsuit in Nevada district court against the school district and various officials alleging both federal and state causes of action.

Approximately one year later, the school district discovered that John had improperly obtained confidential student records, and he failed to cooperate with the school's investigation into that conduct. After the investigation concluded, the school district fired John because of the information obtained during the records investigation and John's previous misconduct. Following John's termination, the school district filed a special motion to dismiss under Nevada's anti-Strategic Lawsuits Against Public Participation (anti-SLAPP) statute. The district court granted the school district's motion, and John now appeals that order.

There are two primary issues on appeal. The threshold issue is whether Nevada's anti-SLAPP statute applies to John's federal causes of action raised in Nevada district court. John's three federal causes of action include the following: (1) religious discrimination, (2) First Amendment violations, and (3) civil rights violations. We

conclude that Nevada's anti-SLAPP statute does apply to these federal causes of action because it is a neutral and procedural statute that does not undermine any federal interests.

Having concluded that Nevada's anti-SLAPP statute applies to John's federal causes of action, the next issue we consider is whether the district court erred in dismissing John's lawsuit under the statute. We conclude that the district court properly dismissed John's lawsuit for two reasons. First, the school district made a threshold showing that the communications by school employees and the DCSD regarding John's inappropriate behavior at work and the resulting investigations were protected under the anti-SLAPP statute, and this showing shifted the burden of production to John. Second, John failed to allege a genuine issue of material fact regarding the claims he filed based on the communications by school employees and the DCSD about the investigations into his conduct at work. As a result, the district court properly dismissed John's lawsuit.

## RELEVANT PROCEDURAL HISTORY AND FACTS

### I. *The DCSD's investigations*

John began working as a security officer for the DCSD in 1989. In 2003, a fellow security officer resigned due to John's unprofessional behavior. During his exit interview, the security officer stated that John engaged in various forms of unprofessional conduct, including egregious racial and sexual remarks about students and other staff members. John also videotaped special education students, made sexually explicit narrations regarding the students, and then showed the video to others.

In addition, a fellow DCSD employee accused John of sexual harassment. After an investigation into the allegations, John received a letter of discipline from the DCSD, which warned that further unprofessional conduct would result in his termination. At the same time, John received a two-week suspension without pay, mandatory sexual misconduct training, and mandatory anger management counseling. The DCSD also prohibited John from using the video surveillance equipment. John filed a grievance with his union, but the discipline was upheld at all three levels of the union's grievance process. John then filed a claim with the EEOC, but the commission concluded that there was no violation.

In 2005, John obtained confidential student disciplinary records, and he failed to cooperate with the school district's subsequent investigation into the matter. As a result, the DCSD suspended John until the conclusion of the investigation. Upon conclusion of the investigation, the DCSD fired John due to the information obtained during the records investigation and John's previous misconduct.

## II. *The federal employment lawsuit in Nevada district court*

In 2004, prior to his termination but after exhausting the EEOC's administrative process, John filed a lawsuit against the DCSD alleging the following: (1) the DCSD engaged in religious discrimination against John, a Protestant, under Title VII; (2) John has a disability under the Americans with Disabilities Act (ADA), which the school district violated; (3) the DCSD violated John's right to free speech, under 42 U.S.C. § 1983, when it retaliated against him for his protesting the removal of his video surveillance duties; and (4) various DCSD officials made false and defamatory statements about John without privilege or justification. In the lawsuit, John also named private individuals working for the DCSD as defendants because they provided information to the DCSD during its investigations of John. For instance, John named a teacher's aid as a defendant because she reported during a DCSD investigation that John had sexually harassed her. John also named the vice principal of Douglas High School as a defendant, alleging that the vice principal discriminated against John based on his Protestant religion by assisting in the DCSD's investigations. Finally, John named a former DCSD security officer as a defendant after the security officer reported to the DCSD during an exit interview that John engaged in various forms of unprofessional conduct, including egregious racial and sexual remarks about students and other staff members.

After John filed the lawsuit, the DCSD filed a motion to dismiss, alleging that the collective bargaining agreement between the school district and John's union barred his claims. The district court dismissed John's state-based defamation claim but denied the motion with respect to the federal Title VII, ADA, and § 1983 claims.

After John's termination, he amended his complaint to include the DCSD officer who fired him, and to include a fifth count: that the DCSD wrongfully terminated him. In response, the DCSD filed a special motion to dismiss under Nevada's anti-SLAPP statute, NRS 41.660. The school district asserted that the school officials' actions related to the investigations of John constituted protected conduct under the statute, and the communications between school officials and the DCSD in furtherance of these investigations were privileged and truthful. The district court granted the DCSD's special motion to dismiss, finding that the DCSD's actions were protected activity under the anti-SLAPP statute, and that John failed to provide sufficient evidence to demonstrate a probability of success regarding his claims. Specifically, the district court found that John's supplemental declaration provided insufficient evidence to set forth a genuine issue of material fact. John now appeals the district court's order granting the DCSD's special motion to dismiss under Nevada's anti-SLAPP statute.

## DISCUSSION

We first explain the purpose of Nevada's anti-SLAPP statute and the standard of review. Afterwards, we analyze and conclude that Nevada's anti-SLAPP statute applies to John's federal claims, and therefore, the district court properly dismissed his lawsuit.

### I. *Nevada's anti-SLAPP statute*

A SLAPP lawsuit is characterized as " 'a meritless suit filed primarily to chill the defendant's exercise of First Amendment rights.' " *Dickens v. Provident Life and Acc. Ins. Co.*, 11 Cal. Rptr. 3d 877, 882 (Ct. App. 2004) (quoting *Wilcox v. Superior Court (Peters)*, 33 Cal. Rptr. 2d 446, 449 n.2 (Ct. App. 1994), *abrogated on other grounds by Equilon Enterprises v. Consumer Cause, Inc.*, 52 P.3d 685, 694 n.5 (Cal. 2002)). The hallmark of a SLAPP lawsuit is that it is filed to obtain a financial advantage over one's adversary by increasing litigation costs until the adversary's case is weakened or abandoned. *U.S. Ex Rel. Newsham v. Lockheed Missiles*, 190 F.3d 963, 970 (9th Cir. 1999). For instance, the California Court of Appeal in *Dickens* affirmed a trial court's grant of an anti-SLAPP motion striking a malicious prosecution count from a complaint. 11 Cal. Rptr. 3d at 877-78. The *Dickens* case arose when the plaintiff sued an insurance company and an insurance investigator alleging they initiated an improper prosecution of the plaintiff by the federal government for insurance fraud. *Id.* at 878. When affirming the district court's order, the court reasoned that the defendants' communications in preparation for a government investigation were in furtherance of their constitutional rights to free speech, and therefore, they were entitled to the benefits of California's anti-SLAPP statute. *Id.* at 883, 885.

Nevada's anti-SLAPP statute was enacted in 1993, shortly after California adopted its statute, and both statutes are similar in purpose and language. *See* NRS 41.660; Cal. Civ. Proc. Code § 425.16 (West 2004 & Supp. 2009). NRS 41.660 defines the type of lawsuits subject to anti-SLAPP motions in Nevada. It says that when a plaintiff brings an action "against a person based upon a good faith communication in furtherance of the right to petition," the defendant may bring a special motion to dismiss within 60 days of service of the complaint. NRS 41.660(1)-(2). When amending Nevada's anti-SLAPP statute in 1997, the Legislature explained that SLAPP lawsuits abuse the judicial process by chilling, intimidating, and punishing individuals for their involvement in public affairs. 1997 Nev. Stat., ch. 387, preamble, at 1364. The Legislature further reasoned that the number of SLAPP lawsuits in Nevada had increased, and therefore, implementation of an anti-SLAPP statute was essential to protect citizens' constitutional rights. *Id.*

Further, the purpose of Nevada's anti-SLAPP statute is similar to the purpose behind the *Noerr-Pennington* immunity doctrine. *See Eastern R. Conf. v. Noerr Motors*, 365 U.S. 127 (1961); *Mine Workers v. Pennington*, 381 U.S. 657 (1965). According to this doctrine, "those who petition all departments of the government for redress are generally immune from liability." *Empress LLC v. City and County*, 419 F.3d 1052, 1056 (9th Cir. 2005). The basis of this doctrine is that representative democracy demands that citizens and public officials have the ability to openly engage in discussions of public concern. *Manistee Town Center v. City of Glendale*, 227 F.3d 1090, 1093 (9th Cir. 2000). As a result, the private or public petitioning of governmental entities is insufficient to violate federal substantive rights. *Id.* In addition, *Noerr-Pennington* immunity does not apply to "sham" cases where a person abuses the government process in order to achieve some benefit. *Boulware v. State of Nev., Dept. of Human Res.*, 960 F.2d 793, 797 (9th Cir. 1992).

Similarly, Nevada's anti-SLAPP statute is predicated on protecting "well-meaning citizens who petition [the] government and then find themselves hit with retaliatory suits known as SLAPP[ ] [suits]." Comments by State Senator on S.B. 405 Before the Senate, 67th Leg. (Nev., June 17, 1993). More importantly, the anti-SLAPP statute only protects citizens who petition the government from civil liability arising from *good-faith communications to a government agency*. NRS 41.637. Thus, Nevada's anti-SLAPP statute is not an absolute bar against federal substantive claims; rather, it bars claims from persons who seek to abuse other citizens' rights to petition their government, and it allows meritorious claims against citizens who do not petition the government in good faith.

## II. *Standard of review*

Pursuant to NRS 41.660(3)-(4), the district court shall treat the special motion to dismiss as a motion for summary judgment, and its granting the motion is an adjudication upon the merits. This court, therefore, reviews de novo the district court's order granting the anti-SLAPP motion. *See Wood v. Safeway, Inc.*, 121 Nev. 724, 729, 121 P.3d 1026, 1029 (2005) (setting forth that a district court's order granting a summary judgment motion is reviewed de novo).

Since the special motion to dismiss is procedurally treated as a summary judgment, the following standards apply. First, the district court can only grant the special motion to dismiss if there is no genuine issue of material fact and "'the moving party is entitled to a

judgment as a matter of law.' '' *Id.* (quoting NRCP 56(c)). Second, the nonmoving party cannot overcome the special motion to dismiss '' 'on the gossamer threads of whimsy, speculation and conjecture.' '' *Id.* at 731, 121 P.3d at 1030 (quoting *Pegasus v. Reno Newspapers, Inc.*, 118 Nev. 706, 713-14, 57 P.3d 82, 87 (2002)) (other internal quotations omitted). Instead, the nonmoving party must provide more than general allegations and conclusions; it must submit specific factual evidence '' 'demonstrating the existence of a genuine factual issue.' '' *Id.* at 731, 121 P.3d at 1030-31 (quoting *Pegasus*, 118 Nev. at 713, 57 P.3d at 87).

Therefore, when a party moves for a special motion to dismiss under Nevada's anti-SLAPP statute, it bears the initial burden of production and persuasion. This means the moving party must first make a threshold showing that the lawsuit is based on "good faith communication[s made] in furtherance of the right to petition" the government. NRS 41.650; *see Globetrotter Software v. Elan Computer Group*, 63 F. Supp. 2d 1127, 1129 (N.D. Cal. 1999) (noting that "[a] defendant filing an anti-SLAPP motion must make an initial prima facie showing that the plaintiff's suit arises from an act in furtherance of the defendant's rights of petition or free speech"). If the moving party satisfies this threshold showing, then the burden of production shifts to the nonmoving party, who must demonstrate a genuine issue of material fact. *See Globetrotter*, 63 F. Supp. 2d at 1129 (recognizing that under California's anti-SLAPP statute, the nonmoving party must demonstrate a probability of prevailing on the merits). If the nonmoving party successfully meets its burden, then the case proceeds to discovery and, potentially, trial. Otherwise, the district court must dismiss the action, and that dismissal operates as an adjudication on the merits. NRCP 56(c); NRS 41.660(3)-(4).

III. *Nevada's anti-SLAPP statute applies to John's federal claims because it is not a state sovereign-immunity statute nor does it undermine any federal interests*

John argues that the district court erred in applying Nevada's anti-SLAPP statute to his federal claims because immunity from federal civil rights statutes cannot arise from state sovereign-immunity law. In other words, John argues that federal law preempts the application of Nevada's anti-SLAPP statute to federal claims. We disagree because Nevada's anti-SLAPP statute differs from state sovereign-immunity statutes and does not undermine any federal interests. In this section, we first consider the difference between Nevada's anti-SLAPP statute and state sovereign-immunity statutes. We then consider whether application of Nevada's anti-SLAPP statute to John's federal claims undermines important federal interests.

## A. *Nevada's anti-SLAPP statute differs significantly from state sovereign-immunity statutes*

John relies on *Ortega v. Reyna*, 114 Nev. 55, 953 P.2d 18 (1998), *abrogated by Martinez v. Maruszczak*, 123 Nev. 433, 443-44 & n.28, 168 P.3d 720, 727 & n.28 (2007), for the assertion that Nevada's anti-SLAPP statute cannot apply to a federal substantive claim. Citing *Ortega*, 114 Nev. at 62 & n.5, 953 P.2d at 23 & n.5, he argues by analogy that because state sovereign-immunity laws cannot insulate the state from 42 U.S.C. § 1983 claims, likewise Nevada's anti-SLAPP statute cannot insulate the school district from John's discrimination claims. John's reliance on *Ortega*, however, is misplaced. While it is true that state sovereign immunity is not a defense to a § 1983 claim, there is a significant difference between state sovereign immunity and Nevada's anti-SLAPP statute.

In *Felder v. Casey*, the United States Supreme Court stated that "a state law that immunizes government conduct otherwise subject to suit under § 1983 is preempted, even where the federal civil rights litigation takes place in state court, because the application of the state immunity law would thwart the congressional remedy." 487 U.S. 131, 139 (1988). Nevada's anti-SLAPP statute, however, is not an absolute bar to liability. Whereas immunity would bar all claims including meritorious claims, Nevada's anti-SLAPP statute differs as it permits cases to proceed to discovery and trial after a nonmoving party makes an initial demonstration of merit. *See Globetrotter*, 63 F. Supp. 2d at 1129.

In other words, Nevada's anti-SLAPP statute filters unmeritorious claims in an effort to protect citizens from costly retaliatory lawsuits arising from their right to free speech under both the Nevada and Federal Constitutions. *See* Comments by State Senator on S.B. 405 Before the Senate, 67th Leg. (Nev., June 17, 1993). Thus, like the federal preemption of state sovereign immunity in § 1983 cases, Nevada's anti-SLAPP statute seeks to promote and protect a citizen's exercise of his or her constitutional rights. As a result, federal preemption under the immunity analysis does not prevent the application of Nevada's anti-SLAPP statute to John's federal claims.

## B. *The federal interest analysis*

We next analyze whether Nevada's anti-SLAPP statute undermines any important federal interests. The first issue in this section is whether Nevada's anti-SLAPP statute is neutral and procedural. This is an important consideration because a state court's determi-

nation that it lacks jurisdiction over a federal claim due to a neutral and procedural statute should only be overturned with great caution. *Howlett v. Rose*, 496 U.S. 356, 372 (1990). The second issue we consider is whether Nevada's anti-SLAPP statute undermines any important federal interests. For this analysis, we discuss whether there is a genuine issue of material fact regarding any of John's three federal claims.

### 1. *Nevada's anti-SLAPP statute is neutral and procedural*

The DCSD argues that Nevada's anti-SLAPP statute is a neutral and procedural statute that does not obstruct federal substantive law. We agree.

As courts of general jurisdiction, Nevada district courts have the authority to decide federal claims. *Id.* at 367. This authority arises from the federal Supremacy Clause, U.S. Const. art. VI, cl. 2., which "charges state courts with a coordinate responsibility to enforce [federal] law according to their regular modes of procedure." *Howlett*, 496 U.S. at 367. In *Howlett*, the United States Supreme Court recognized three corollaries that arise from this concurrent jurisdiction, and the corollary relevant to this case is the following: "When a state court refuses jurisdiction because of a *neutral state rule regarding the administration of the courts*, [the Supreme Court] must act with utmost caution before deciding that it is obligated to entertain the claim." *Id.* at 369, 372 (emphasis added).

Although the Supremacy Clause requires state courts to treat federal substantive law as the law of the land, the clause does not require state courts to apply federal procedural rules. *See Johnson v. Fankell*, 520 U.S. 911, 919 (1997) (discussing state court authority to refuse jurisdiction over a federal claim based on a neutral procedural state court rule). " '[F]ederal law takes the state courts as it finds them.' " *Id.* (quoting *Howlett*, 496 U.S. at 372) (other internal quotations omitted).

Therefore, Nevada's anti-SLAPP statute may apply to John's federal claims if it is a neutral and procedural statute. When determining whether Nevada's anti-SLAPP statute falls within this category, we consider California caselaw because California's anti-SLAPP statute is similar in purpose and language to Nevada's anti-SLAPP statute. *See* NRS 41.660; Cal. Civ. Proc. Code § 425.16 (West 2004 & Supp. 2009).

In *Bradbury v. Superior Court (Spencer)*, the appellant raised an argument in a California Court of Appeal that was similar to John's assertion that Nevada's anti-SLAPP statute does not apply to federal substantive claims. 57 Cal. Rptr. 2d 207, 213 (Ct. App. 1996). The

*Bradbury* appellant argued that California's anti-SLAPP statute does not apply to federal civil rights claims. *Id.* The court rejected this argument, holding that "[w]here the action is founded on a federal statute and brought in state court, state procedure controls unless the federal statute provides otherwise." *Id.* Thus, the appellate court applied California's anti-SLAPP statute to the federal civil rights claim because it viewed the statute's provisions as procedural in nature. *Id.*; *see generally Vergos v. McNeal*, 53 Cal. Rptr. 3d 647 (Ct. App. 2007) (applying California's anti-SLAPP statute to a federal civil rights action).

Moreover, California's anti-SLAPP statute allows a defendant to a SLAPP lawsuit to file a special motion to strike the lawsuit within 60 days of service of the complaint or in the court's discretion. Cal. Civ. Proc. Code § 425.16(b)(1), (f) (West 2004 & Supp. 2009). Once the defendant proves that the anti-SLAPP statute applies, the burden of production shifts to the plaintiff to show that there is a probability that he or she will prevail on the claim. *Id.* "In making its determination, the court shall consider the pleadings, and supporting and opposing affidavits stating the facts upon which the liability or defense is based." Cal. Civ. Proc. Code § 425.16(b)(2). The district court's ruling on the motion is an adjudication on the merits. Cal. Civ. Proc. Code § 425.16(i).

Similarly, Nevada's anti-SLAPP statute allows the defendant to file a special motion to dismiss within 60 days of service of the complaint. NRS 41.660(1)-(2). The statute requires the district court to treat the special motion to dismiss as a motion for summary judgment, and its granting the motion is an adjudication upon the merits. NRS 41.660(3)-(4). Thus, once the defendant proves that Nevada's anti-SLAPP statute applies to the case, the burden of production shifts to the plaintiff to show that there is a genuine issue of material fact.

A comparison of the two statutes illustrates that both statutes create a procedural requirement that the plaintiff must overcome if his claim is to proceed to discovery and trial. Essentially, both statutes treat the procedure as a form of summary judgment wherein both parties are allowed to present their evidence. NRS 41.660(3); Cal. Civ. Proc. Code § 425.16(b)(1)-(3) (West 2004 & Supp. 2009). The burden of production is initially on the defendant who must demonstrate the applicability of the statute. *See Globetrotter Software v. Elan Computer Group*, 63 F. Supp. 2d 1127, 1129 (N.D. Cal. 1999). Once he meets his initial burden, the burden shifts to the plaintiff who must show that his claim has merit. *See id.* And at all times, the burden of persuasion is on the defendant. *See* NRS 41.660; Cal. Civ. Proc. Code § 425.16(b)(1)-(3).

In providing an additional pretrial mechanism for filtering frivolous claims from those claims having arguable merit, these statutes amount to a unique summary judgment motion, a motion that, if

granted, is appealable. *See Lee v. GNLV Corp.*, 116 Nev. 424, 428, 996 P.2d 416, 418 (2000) (concluding the district court order granting summary judgment was an appealable final judgment). Neither statute creates a substantive cause of action or defense. Instead, like rules of civil procedure, the statutes create a procedural mechanism to prevent wasteful and abusive litigation by requiring the plaintiff to make an initial showing of merit. Thus, Nevada's anti-SLAPP statute is procedural in nature. *Cf. U.S. Ex Rel. Newsham v. Lockheed Missiles*, 190 F.3d 963, 973 (9th Cir. 1999) (applying California's anti-SLAPP statute to pendent state law counterclaims and, while recognizing the state interest in deterring frivolous, retaliatory litigation as substantive to the extent of meriting application in federal court, characterizing the anti-SLAPP statute as a state procedural statute for purposes of its analysis).

In addition, the statute is neutral in application. The statute applies to both state and federal substantive claims raised by either a plaintiff's complaint or a defendant's counterclaim. Further, the statute only applies in those cases involving "[g]ood faith communication in furtherance of the right to petition" the government. NRS 41.637. Thus, the statute is neutral and limited in its application. *See* 17A James Wm. Moore, *Moore's Federal Practice* § 124.61 (3d ed. 2009) (stating that "[s]tates may apply their own neutral procedural rules to federal claims, unless federal law preempts those rules because application of the state rules would defeat federal substantive rights").

Consequently, we agree with the reasoning set forth in *Bradbury* and conclude that, based on the similarities between Nevada's anti-SLAPP statute and California's comparable statute, Nevada's anti-SLAPP statute is a neutral and procedural statute.

### 2. *Nevada's anti-SLAPP statute does not undermine any important, substantive federal interests*

Although Nevada's anti-SLAPP statute is neutral and procedural, it cannot be applied to federal claims under the Supremacy Clause if it defeats federal rights or frustrates "[c]ongressionally-created substantive rights." 17A Moore, *supra*, § 124.62. Here, John alleges three substantive claims, including: (1) religious discrimination, (2) violation of the ADA, and (3) civil rights violations against his free speech. However, he fails to identify how Nevada's anti-SLAPP statute would undermine or frustrate important federal rights.

In *Lockheed*, the Ninth Circuit Court of Appeals recognized that both California's anti-SLAPP statute and the Federal Rules of Civil Procedure "serve similar purposes, namely the expeditious weeding out of meritless claims before trial." 190 F.3d at 972. In addition, the Ninth Circuit recognized that anti-SLAPP statutes protect a citizen's right to petition his government without repercussion. *Id.* at 973. Given these two characteristics of anti-SLAPP statutes, in-

cluding Nevada's, and John's failure to identify any undermined or frustrated federal interests, we conclude that Nevada's anti-SLAPP statute does not violate any important, substantive federal interests in this case.

 ██

With regard to John's religious discrimination claim, he alleged that the DCSD engaged in adverse employment actions against him due to his Protestant religion. At the hearing on the special motion to dismiss, the DCSD submitted evidence that it was not aware of John's religious beliefs. In response, John failed to provide any evidence of religious discrimination other than his own general allegations in his pleadings.

 ██

John also alleged that the school district had violated the ADA because his alcoholism constituted a disability under the Act and the school district's adverse employment actions violated the Act. While alcoholism is a disability under the ADA, John failed to provide any documentation supporting his claimed disability or adverse employment treatment. *Brown v. Lucky Stores, Inc.*, 246 F.3d 1182, 1187 (9th Cir. 2001). Instead, the evidence shows that the DCSD terminated John for, among other things, his failure to cooperate with a school investigation after he obtained confidential student disciplinary records. Further, when responding to John's EEOC complaint, the DCSD stated that it did not know of John's alcoholism, and he never sought accommodation for any disability.

 ██

Finally, John alleged civil rights violations against his freedom of speech. After the DCSD initially investigated John's behavior, it found, among other things, that he had inappropriately used school surveillance equipment. In addition to a suspension, the DCSD also removed John's access to video equipment, and John objected. At the hearing, John failed to rebut the DCSD argument that *Garcetti v. Ceballos*, 547 U.S. 410 (2006), precluded his First Amendment claim because his objections to the removal of his surveillance duties are not protected communications.

In *Garcetti*, the United States Supreme Court held that when a public employee is not speaking as a citizen on a matter of public concern, then the employee has no First Amendment cause of action against the employer for its reaction to the speech. *Id.* at 418. Further, the Supreme Court held that ''[a] government entity has broader discretion to restrict speech when it acts in its role as employer, but the restrictions it imposes must be directed at speech that has some potential to affect the entity's operations.'' *Id.* Here, John was abusing the school district's video equipment—by taping special education students, sexually narrating the taping, and showing it to

others—in a manner that could open the DCSD to liability. Further, the DCSD asserted that John's use of the equipment was creating a hostile work environment, adversely affecting the school district's operations.

In addition, the Ninth Circuit has also stated that First Amendment protection does not apply to public employees making statements pursuant to their official duties. *Marable v. Nitchman*, 511 F.3d 924, 929 (9th Cir. 2007). Thus, John's disagreement with the school district over the removal of his video equipment duties is not protected speech.

As a result, we conclude that John's failure to rebut the DCSD's positions does not mean Nevada's anti-SLAPP statute undermined or frustrated any federal substantive claims. On the contrary, John could have proceeded with his federal substantive claims had he shown a genuine issue of material fact. In other words, Nevada's neutral and procedural anti-SLAPP statute neither undermines nor frustrates John's federal substantive claims. As a result, Nevada district courts can apply the statute to cases involving similar SLAPP claims.

We now discuss whether Nevada's anti-SLAPP statute can be used by private individuals or a government entity to dismiss a complaint when the private individuals or government entity claim that the communications for which they are being sued were truthful, made without knowledge of falsehood, or regard a matter of reasonable concern to the government entity.

IV. *Nevada's anti-SLAPP statute can be used by private individuals or a government entity to seek dismissal of a SLAPP complaint*

John argues that there is a genuine issue of material fact regarding whether the communication between the various school employees and the DCSD were good-faith communications made in furtherance of the right to free speech. Particularly, he argues that his supplemental declaration filed in opposition to the special motion to dismiss establishes that the communications were discriminatory and retaliatory and not made to a government agency. We disagree because John's supplemental declaration did not set forth a genuine issue of material fact regarding whether the communications were discriminatory or retaliatory, and Nevada's anti-SLAPP statute applies to school districts.

"Statutory construction is a question of law that this court reviews de novo." *Richardson Constr. v. Clark Cty. Sch. Dist.*, 123 Nev. 61, 64, 156 P.3d 21, 23 (2007). When interpreting a statute, this court

looks to the plain statutory language and gives effect to the Legislature's intent. *Id.*

Looking at the plain language of Nevada's anti-SLAPP statute, there are three classes of petitions protected by the statute. The first two classes include any communication that is truthful or made without knowledge of falsehood and is made for the following reasons: (1) to procure government or electoral action or (2) to address a matter that reasonably concerns the petitioned governmental entity. NRS 41.637(1)-(2). The third protected class includes any written or oral statement that is truthful or made without knowledge of falsehood and directly addresses an issue before "a legislative, executive or judicial body, or any other official proceeding authorized by law." NRS 41.637(3).

The second class of protected petitions applies to all political subdivisions of Nevada as defined by NRS 41.0305, which includes school districts. NRS 41.637(2). Thus, Nevada's anti-SLAPP statute protects good-faith communications if those communications were truthful or made without knowledge of falsehood and regard a matter of reasonable concern to the school district. *Id.*

Further, employers, like the DCSD, may receive the benefits of Nevada's anti-SLAPP statute based on the reasoning in *Raining Data Corp. v. Barrenechea*, 97 Cal. Rptr. 3d 196 (Ct. App. 2009). The *Raining Data* case arose after an employer, Raining Data, brought an action against its former employee for misappropriation of trade secrets. *Id.* at 198. The former employee responded by filing a cross-complaint against Raining Data alleging claims arising from the employer's filing of the complaint and communicating with customers and prospective customers. *Id.* at 198, 200. After the former employee filed his cross-complaint, Raining Data filed a motion to strike the entire cross-complaint under California's anti-SLAPP statute. *Id.* at 198. The district court granted Raining Data's motion, and the California Court of Appeal affirmed, reasoning that Raining Data made a threshold showing that the former employee's claims arose from a protected activity but the former employee failed to show a probability of success on the merits. *Id.* at 202-03. We agree with the reasoning set forth in *Raining Data* and conclude that the DCSD may receive the benefits of Nevada's anti-SLAPP statute if it shows that John's claims arose from protected activity, and John fails to show a genuine issue of material fact.

### A. *The communications were truthful or made without knowledge of falsehood*

Here, the DCSD provided the following evidence to support its position that the communications were in furtherance of its right to free speech: (1) exit interview documents, (2) John's training and counseling documents, (3) John's letter of discipline, (4) the Douglas

High principal's responsive memorandum regarding John's EEOC complaint, (5) EAP records regarding John's counseling, (6) the DCSD's response to John's EEOC complaint, and (7) the EEOC's finding of a lack of information to establish any violations. Further, the school district provided written evidence that it was unaware of John's religion and his alleged disability. All of these documents are communications to or by the school district in the context of various investigations. Thus, the DCSD provided enough information to shift the burden of production to John.

John, however, has not provided any evidence that the communications were untruthful or made with knowledge of falsehood. John submitted a supplemental declaration in opposition to the DCSD's special motion to dismiss. However, the district court determined that this declaration was insufficient to establish a genuine issue of material fact because it merely disagreed in narrative form with the DCSD's credible evidence. We conclude that John's declaration, although procedurally sufficient, failed to set forth specific facts demonstrating a genuine issue of material fact regarding whether the communications were untruthful or made with knowledge of their falsehood. NRCP 56(e); *Wood v. Safeway, Inc.*, 121 Nev. 724, 731, 121 P.3d 1026, 1030-31 (2005). Moreover, the DCSD's subsequent investigations supported the veracity of the communications. A report from Ms. Ann Silver, an independent third party that held individual training sessions with John, stated that John acknowledged his unprofessional behavior as it applied to his inappropriate use of the video equipment, the offensiveness of his verbal comments, and the sexual harassment allegations.

### B. *The communications were of reasonable concern to the school district*

John also failed to establish a genuine issue of material fact as it applied to the school district's concern over the matters communicated to it. The matters communicated to the DCSD were of reasonable concern to the district because they addressed the school environment as it applied to staff and students and they impacted the school district's potential legal liability. The DCSD's affidavits, interview documents, and disciplinary documents established that the written and oral statements against John were part of the school district's investigation into his conduct. Since John failed to provide any evidence in his supplemental declaration that the communications were not matters of reasonable concern to the school district, he failed to meet his burden of production. As a result, the district court correctly held that the anti-SLAPP statute applied to the communications, which were good-faith communications in furtherance of the right to free speech as defined by NRS 41.637.

## CONCLUSION

We conclude that Nevada's anti-SLAPP statute does apply to John's federal causes of action because it is a neutral and procedural statute that does not undermine any federal interests. We further conclude that the district court properly dismissed John's lawsuit because the school district made a threshold showing that the relevant communications were protected under the anti-SLAPP statute, and John failed to establish a genuine issue of material fact regarding the relevant communications. Thus, we affirm the district court's dismissal of John's complaint.

HARDESTY, C.J., PARRAGUIRRE, DOUGLAS, CHERRY, SAITTA, and PICKERING, JJ., concur.