**An unpublished order shall not be regarded as precedent and shall not be cited as legal authority. SCR 123.**

## IN THE SUPREME COURT OF THE STATE OF NEVADA

BRADLEY DAVIS,
Appellant,
vs.
TROY PARKS, AN INDIVIDUAL;
WASHOE COUNTY SCHOOL
DISTRICT, A POLITICAL
SUBDIVISION OF THE STATE OF
NEVADA; MICHELLE EDWARDS, AN
INDIVIDUAL; MEGAN CRAMNER, AN
INDIVIDUAL; LORETTA THOMAS, AN
INDIVIDUAL; MARYANNE
ROBINSON, AN INDIVIDUAL; AND
PAUL S. DUGAN, AN INDIVIDUAL,
Respondents.

No. 61150

**FILED**

APR 2 3 2014

TRACIE K. LINDEMAN
CLERK OF SUPREME COURT
BY_____
DEPUTY CLERK

### *ORDER OF AFFIRMANCE*

This is an appeal from a district court order granting a special motion to dismiss pursuant to Nevada's anti-SLAPP statutes. Second Judicial District Court, Washoe County; Steven R. Kosach, Judge.

Appellant Bradley Davis worked as a teacher at Lemmon Valley Elementary School (LVES). During the 2007-2008 and 2008-2009 school years, respondents Troy Parks, Michelle Edwards, Megan Cranmer, Paul Dugan, and the Washoe County School District (collectively WCSD) participated in two investigations involving allegations of sexual harassment and inappropriate touching of students by Davis.[1] After Davis received a ten-day suspension and two letters of admonition for the

---

[1]During all relevant times, Parks was principal at LVES, Edwards was assistant principal at LVES, Cramer was the school counselor at LVES, and Dugan was the Superintendent of Schools.

14-13032

misconduct, WCSD re-assigned him to Silver Lake Elementary School (SLES). In November 2009, respondents Loretta Thomas, SLES principal, and Maryanne Robinson, SLES Coordinator and Director, worked with Davis to address Davis' failure to implement teaching strategies from his supervisors. As a result, SLES placed him on a Track III focused Professional Assistance Plan (Track III).[2] He remained on Track III until February 2011.

In November 2011, Davis filed a complaint against WCSD alleging conspiracy, intentional interference with contractual relations, abuse of process, negligence, and violation of his First Amendment and due process rights. WCSD filed a special motion to dismiss under Nevada's anti-SLAPP statutes, NRS 41.650 and NRS 41.660. The district court entered an order granting WCSD's motion, dismissing all five of Davis' claims.

Davis now appeals, arguing that: (1) Nevada's anti-SLAPP statutes violate the separation of powers clause and the supremacy clause; (2) the district court erred in granting WCSD's special motion to dismiss because WCSD did not meet its burden to show that its communications regarding Davis were in good faith and in furtherance of the right to petition, and (3) even if WCSD met its burden, the district court should have denied the motion because Davis demonstrated a genuine issue of material fact for his five claims.

---

[2]Track III is a program where other teachers provide assistance to improve one's performance.

*Nevada's anti-SLAPP statutes are constitutional*

We review the constitutionality of a statute de novo. *Silvar v. Eighth Judicial Dist. Court*, 122 Nev. 289, 292, 129 P.3d 682, 684 (2006). "Statutes are presumed to be valid, and the challenger bears the burden of showing that a statute is unconstitutional." *Id.* Further, we will not overturn precedent "'absent compelling reasons for so doing.'" *Armenta-Carpio v. State*, 129 Nev. ___, ___, 306 P.3d 395, 398 (2013) (quoting *Miller v. Burk*, 124 Nev. 579, 597, 188 P.3d 1112, 1124 (2008)). It must be more than a mere disagreement, such that departing from the doctrine of stare decisis "is necessary to avoid the perpetuation of error." *Stocks v. Stocks*, 64 Nev. 431, 438, 183 P.2d 617, 620 (1947) (internal quotations omitted); *see also Miller*, 124 Nev. at 597, 118 P.3d at 1124 ("Mere disagreement does not suffice.").

*Nevada's anti-SLAPP statutes do not violate the separation of powers clause*

Davis argues that NRS 41.650 violates the separation of powers doctrine because it interferes with discovery in a civil case by undermining the judicial procedural mechanisms of summary judgment. We disagree.

The Nevada Constitution divided the government into the Legislative, the Executive and the Judicial. *Berkson v. LePome*, 126 Nev. ___, ___, 245 P.3d 560, 564 (2010) (citing Article 3, Section 1(1) of the Nevada Constitution). "[N]o persons charged with the exercise of powers properly belonging to one of these departments shall exercise any functions, appertaining to either of the others . . . ." Nev. Const. art. 3, § 1. The legislature violates the separation of powers clause if it "enact[s] a procedural statute that conflicts with a pre-existing procedural rule." at ___, 245 P.3d at 565 (internal quotations omitted). Further, a statute is

unconstitutional if it "interferes with the judiciary's authority to manage the litigation process and [the] court's ability to provide finality through the resolution of a matter on appeal." *Id.* at ___, 245 P.3d at 566 (concluding that NRS 11.340 was unconstitutional because it acts to "prolong previously resolved cases, resulting in unnecessary expenses for adverse parties and the diversion of time and scarce judicial resources away from undecided cases").

Nevada's anti-SLAPP statutes, NRS 41.635-41.670, grant immunity to good faith communications that are "in furtherance of the right to petition." NRS 41.650. These statutes allow a party to file a special motion to dismiss, which the district court treats as a motion for summary judgment. NRS 41.660(2)-(3) (requiring the moving party make a threshold showing, then the burden shifts to the nonmoving party to show by clear and convincing evidence a probability of prevailing on the claim).

We conclude that Nevada's anti-SLAPP statutes do not interfere with the judicial branch. Unlike in *Berkson*, Nevada's anti-SLAPP statutes actually assist the judiciary in managing cases by providing a vehicle to dismiss meritless claims. These statutes aid the judiciary by conserving judicial resources, saving the parties from incurring unnecessary expenses, and preventing the parties from prolonging meritless cases. Thus, Nevada's anti-SLAPP statutes do not violate the separation of powers clause.

*Nevada's anti-SLAPP statutes do not violate the supremacy clause*

Davis argues that this court should reconsider its decision in *John v. Douglas County School District*, 125 Nev. 746, 219 P.3d 1276 (2009), and conclude that Nevada's anti-SLAPP statutes violate the

supremacy clause. We disagree and decline to overturn our holding in *John*.

Nevada's anti-SLAPP statutes provide that "[a] person who engages in a good faith communication in furtherance of the right to petition . . . is immune from any civil action for claims based upon the communication." NRS 41.650. NRS 41.637(2) defines "good faith communication in furtherance of the right to petition" as "[c]ommunication of information or a complaint to . . . a political subdivision of this state, regarding a matter reasonably of concern to the respective governmental entity." School districts are included in "political subdivision." NRS 41.0305; *see also John*, 125 Nev. at 761, 219 P.3d at 1286. Thus, these statutes protect good faith communications made to the school district. *John*, 125 Nev. at 761, 219 P.3d at 1286.

"[A] state law that immunizes government conduct otherwise subject to suit under [42 U.S.C.] § 1983 is preempted, even where the federal civil rights litigation takes place in state court, because the application of the state immunity law would thwart the congressional remedy." *Felder v. Casey*, 487 U.S. 131, 139 (1988). However, we have distinguished Nevada's anti-SLAPP statutes from the statutes at issue in *Felder* and stated that Nevada's anti-SLAPP statutes do not afford absolute immunity from liability. *John*, 125 Nev. at 755, 219 P.3d at 1282. Instead, these statutes provide immunity only against meritless claims and "permit[ ] cases to proceed to discovery and trial after a nonmoving party makes an initial demonstration of merit." *Id.* The Nevada legislature intended these statutes to "filter[ ] unmeritorious claims in an

effort to protect citizens from costly retaliatory lawsuits arising from their right to free speech."[3] *Id.*

A statute that is applied to federal claims in state court will not violate the supremacy clause if the statute is neutral and procedural. *Id.* at 756-58, 219 P.3d at 1283-84. In *John*, we determined that Nevada's anti-SLAPP statutes were procedural in nature because "the statutes create a procedural mechanism to prevent wasteful and abusive litigation by requiring the plaintiff to make an initial showing of merit." 125 Nev. at 758, 219 P.3d at 1284. Further, we held that the statutes are neutral in application because they "appl[y] to both state and federal substantive claims raised by either a plaintiff's complaint or a defendant's counterclaim" and only apply when "'[g]ood faith communication[s] in furtherance of the right to petition'" are at issue. *Id.* (quoting NRS 41.637). Thus, we concluded that Nevada's anti-SLAPP statutes applied to federal claims in state court. *Id.* at 760, 219 P.3d at 1286.

However, a statute violates the supremacy clause if it defeats a federal right or frustrates a substantive right created by Congress. *John*, 125 Nev. at 758, 219 P.3d at 1284. We noted that the purposes of anti-SLAPP statutes are to (1) dismiss meritless claims before trial, and (2) protect a citizen's right to petition his government without repercussion. *Id.* at 755, 219 P.3d at 1282. Based on these purposes and the appellant's failure to show a genuine issue of material fact, we concluded in *John* that Nevada's anti-SLAPP statutes do not "undermine[ ] or frustrate[ ] any federal substantive claims." *Id.* at 760,

---

[3]Further, we have determined that these statutes can be used by a government agency. *John*, 125 Nev. at 760-61, 219 P.3d at 1286.

219 P.3d at 1285-86 (noting that appellant "could have proceeded with his federal substantive claims had he shown a genuine issue of material fact").

We conclude that Nevada's anti-SLAPP statutes (1) are neutral and procedural, and (2) do not frustrate a substantive right. This is consistent with our holding in *John*. Therefore, we conclude that Nevada's anti-SLAPP statutes do not violate the supremacy clause.[4]

*The district court properly granted Davis' special motion to dismiss*

"[T]he district court shall treat the special motion to dismiss as a motion for summary judgment, and its granting the motion is an adjudication upon the merits." *John*, 125 Nev. at 753, 219 P.3d at 1281. Therefore, this court reviews a district court's order granting an anti-SLAPP special motion to dismiss de novo. *Id.*

*WCSD met its initial burden*

Davis argues that WCSD failed to show good faith communication as required to invoke the protection of the anti-SLAPP statutes. Thus, Davis argues that the district court erred in finding that WCSD met its burden. We disagree.

"[W]hen a party moves for a special motion to dismiss . . . it bears the initial burden of production and persuasion." *John*, 125 Nev. at 754, 219 P.3d at 1282. This burden requires the moving party to "make a threshold showing that the lawsuit is based on '[g]ood faith communication[s made] in furtherance of the right to petition' the

---

[4]Further, Davis' argument that his federal claims are frustrated is meritless because he could have proceeded with these claims if he had shown a genuine issue of material fact on these claims. However, the district court found that he failed to meet this burden.

SUPREME COURT
OF
NEVADA

(O) 1947A

government." *Id.* (second alteration in original) (quoting NRS 41.650). The moving party can meet its burden by showing that the communications were made in the furtherance of an investigation. *Id.* at 762, 219 P.3d at 1287 (concluding that production of documents showing that the "communications to or by the school district [were] in the context of various investigations" was enough to shift the burden of production to the plaintiff).

WCSD provided the district court with evidence to show that its statements were protected under Nevada's anti-SLAPP statute: (1) the Collective Bargaining Agreement between Washoe Education Association and WCSD, and the WCSD policies and regulations showing that the school district and employees were required to participate in the investigation; (2) a 2007 letter of admonition stating that an investigation revealed Davis made inappropriate sexual comments to fellow teachers; (3) a 2007 e-mail from Parks to Davis showing that Davis attempted to make a sexual harassment complaint about Edwards during the same time period of the school's sexual harassment investigation of him, however Davis never formally filed a written complaint; (4) a 2008 letter of admonition and intention to suspend stating that the investigation revealed that Davis had inappropriately touched students; (5) an amended intent-to-suspend letter following Davis' appeal, stating that he would be suspended for 10 days instead of 20 days and reiterating the inappropriate sexual actions that the investigation revealed; and (6) affidavits from Parks, Christiansen, Edwards, Cranmer, and Dugan, among others, showing that their investigations and statements regarding Davis were based on the reasonable safety concerns of each individual and the

district, were made in good faith and without malice, and were not made with the intent to harm or harass Davis.

The district court found that "[WCSD's] communications were all made in the context of various investigations and evaluations of [Davis]." Further, the district court noted that the communications regarding Davis' conduct as a teacher "'were of reasonable concern to [WCSD] because they addressed the school environment as it applied to staff and students and they impacted [WCSD's] potential legal liability.'" (alterations in original) (quoting *John*, 125 Nev. at 762, 219 P.3d at 1287). The district court found that the statements qualified as good faith communications because they were "'aimed at procuring any government . . . action, result or outcome.'" (quoting NRS 41.637(1)).

We conclude that the district court properly found that WCSD met its burden. Like the school district in *John*, WCSD provided the district court with extensive documentation and evidence showing the statements were made for the purpose of an investigation by WCSD. Additionally, WCSD submitted affidavits that indicate good faith and are consistent with the other investigation documents. Therefore, we conclude that the district court did not err in finding that WCSD met its initial burden.[5]

---

[5]We note, however, that the district court incorrectly relied on NRS 41.637(1) when determining that the statements qualified as anti-SLAPP communications because NRS 41.637(2) would have been more appropriate pursuant to this court's analysis in *John*. However, this error was harmless because the district court would have come to the same result. *See Sengel v. IGT*, 116 Nev. 565, 570, 2 P.3d 258, 261 (2000) (affirming a district court decision that reached the right result, albeit for the wrong reasons).

SUPREME COURT
OF
NEVADA

(O) 1947A

*Davis failed to establish a genuine issue of material fact*

Davis argues that even if this court concludes that WCSD met its burden, the district court erred in granting the special motion to dismiss because he pleaded sufficient facts in his complaint to create a genuine issue of material fact. We disagree.

Once the moving party has met its burden of showing that Nevada's anti-SLAPP statutes apply, the burden of production shifts to the nonmoving party, who must demonstrate a genuine issue of material fact. *John,* 125 Nev. at 754, 219 P.3d at 1282. If the district court determines that the nonmoving party has demonstrated a genuine issue of material fact, the case will then proceed to discovery. *Id.* However, if the nonmoving party fails to establish a genuine issue of material fact, the district court must dismiss the action. *Id.; see also* NRS 41.660(4) (noting that "the dismissal operates as an adjudication upon the merits").

When responding to a special motion to dismiss, the nonmoving party must provide evidence and may not merely present a narrative disagreement with the moving party. *John,* 125 Nev. at 762, 219 P.3d at 1287. In *John,* this court concluded that the plaintiff's opposition to the defendant school district's special motion to dismiss (1) did not establish a genuine issue of material fact and "merely disagreed in narrative form with [the school district's] credible evidence," and (2) failed to "provide[ ] any evidence that the communications were untruthful or made with knowledge of falsehood." *Id.* Therefore, the district court properly granted the school district's special motion to dismiss. *Id.* at 763, 219 P.3d at 1287.

Further, in order to meet its burden of production, the nonmoving party must show that the communications were not a matter of reasonable concern to the moving party. *Id.* at 762, 219 P.3d at 1287.

In *John*, the school district's communications were part of an investigation of a school security officer for unprofessional conduct. *Id.* at 750, 219 P.3d at 1279. This court concluded that "[t]he matters communicated to the [school district] were of reasonable concern to the district because they addressed the school environment as it applied to staff and students and they impacted the school district's potential legal liability." *Id.* at 762, 219 P.3d at 1287. When the burden shifted to the security officer to establish a genuine issue of material fact, he failed to show that "the communications were not matters of reasonable concern to the school district." *Id.* Therefore, this court concluded that the district court properly granted the school district's special motion to dismiss. *Id.* at 762-63, 219 P.3d at 1287.

Davis has five claims that are the subject of his appeal: (1) Davis supports his conspiracy claim by arguing that the facts "create a reasonable inference of concerted action among [WCSD]", (2) he supports his intentional interference claim by arguing that the doctrine of equitable tolling applies, (3) he supports his abuse of process claim by arguing that WCSD "possessed an ulterior purpose" when investigating him, (4) he supports his negligence claim by arguing that the discretionary function immunity does not apply to WCSD, (5) he supports his First Amendment claim by arguing that his "expressive activity was of public concern" and his due process claim by arguing that the claim "survives under the conspiracy theory." The district court found that Davis failed to establish a genuine issue of material fact for any of his five claims.

We conclude the district court properly found that Davis failed to demonstrate a genuine issue of material fact for his claims. Davis

SUPREME COURT
OF
NEVADA

(O) 1947A

11

merely presents narrative disagreements with WCSD.   Therefore, the district court did not err in dismissing Davis' claims.

Accordingly, we ORDER the judgment of the district court AFFIRMED.[6]

_____, C.J.
Gibbons

_____, J.
Pickering

_____, J.
Hardesty

_____, J.
Parraguirre

_____, J.
Douglas

_____, J.
Cherry

_____, J.
Saitta

---

[6]We have considered Davis' remaining arguments and conclude they are without merit.

cc: Hon. Steven R. Kosach, District Judge
Second Judicial District Court Dept. 8
David Wasick, Settlement Judge
Jeffrey A Dickerson
Washoe County School District Legal Department
Washoe District Court Clerk

Supreme Court
of
Nevada

(O) 1947A