2016 OK CIV APP 63

Janice **STEIDLEY**, David Iski, and Sean McConnell, Plaintiffs/appellees,

v.

**COMMUNITY NEWSPAPER HOLDINGS, INC.**, Newspaper Holdings, Inc., Bailey Dabney, Randy Cowling, and Salesha Wilken, Defendants/appellants.

**Case Number: 114207**

Court of Civil Appeals of Oklahoma, Division No. 1.

Decided: 01/29/2016

Mandate Issued: 10/20/2016

---

Gary L. Richardson, Charles L. Richardson, Mbilike Mwafulirwa, Tulsa, Oklahoma, for Plaintiff/Appellee, Janice Steidley,

Mark D. Antinoro, Christopher Garner, Pryor, Oklahoma, for Plaintiffs/Appellees, David Iski and Sean McConnell,

Michael Minnis, S. Douglas Dodd, DOERNER, SAUNDERS, DANIEL & ANDERSON, LLP, Tulsa, Oklahoma, for Defendants/Appellants.

Bay Mitchell, Judge:

¶1 Plaintiff/Appellee Janice Steidley, who was then serving as the District Attorney for Rogers, Mayes, and Craig counties, along with two of her Assistant District Attorneys, Plaintiffs/Appellees David Iski and Sean McConnell (collectively, "Plaintiffs") filed suit against Defendants/Appellants, the publisher of the Claremore Daily Progress, Bailey Dabney, the owner of the newspaper, Community Newspaper Holdings, Inc. ("CNHI"), one of its reporters, Salesha Wilken, and an editorial writer, Randy Cowling (collectively, "Defendants"). Plaintiffs alleged that articles and editorials appearing in the Claremore Daily Progress, which were authored or edited by the various individual Defendants, constituted libel *per se* against Plaintiffs because such articles contained materially false statements, including allegations of criminal conduct, regarding Plaintiffs' actions as District Attorney and Assistant District Attorneys. Plaintiffs asked for actual damages in excess of $10,000 and further alleged that such statements were made in bad faith, with reckless disregard for the truth, and with malice such that Defendants were liable for punitive damages under both Category I and Category II as set forth in 23 O.S. 9.1.

¶2 Plaintiffs filed their original Petition March 3, 2013 followed by the filing of their

First Amended Petition August 8, 2013.[1] On September 26, 2013, each of the Defendants filed separate answers in response to the First Amended Petition. Litigation between the parties continued for over one year. On December 29, 2014, some nineteen months after the filing of the original Petition and fourteen months after the filing of the First Amended Petition, Defendants filed a Motion to Dismiss pursuant to the Oklahoma Citizens Participation Act ("OCPA Motion to Dismiss"), 12 O.S. Supp. 2015 1430–1440.[2] The trial court denied this motion, and Defendants appealed pursuant to 12 O.S. Supp. 2015 1437, which provides a specific right to appeal the denial of a motion to dismiss brought pursuant to the Oklahoma Citizens Participation Act ("OCPA" or "Act").[3]

## BACKGROUND

¶ 3 The OCPA requires dismissal of an action "if the moving party shows by a preponderance of the evidence that the legal action is based on, relates to or is in response to the party's exercise of: 1. The right of free speech; 2. The right to petition; or 3. The right of association." 12 O.S. Supp. 2015 1434(B). If the movant makes this showing, the burden shifts to the claimant to "establish[ ] by clear and specific evidence a prima facie case for each essential element of the claim in question." *Id.*(C). However, even if the claimant meets this burden, the trial court must dismiss the legal action if the moving party "establishes by a preponderance of the evidence each essential element of a valid defense to the [claimant's] claim." *Id.*(D). In the event the motion to dismiss is granted, the law directs that the court *shall* award to the movant court costs, reasonable attorney fees, other expenses, and sanctions "as the court determines sufficient to deter the party who brought the legal action from bringing similar actions . . . ." *Id.*(A) (emphasis added). Conversely, if a moving party uses the special motion to dismiss in a manner that is "frivolous or solely intended to delay, the court *may* award court costs and reasonable attorney fees to the responding party." *Id.*(B) (emphasis added).

¶ 4 The OCPA requires the special motion to dismiss to be filed within sixty (60) days of the date of service of the legal action, but "[t]he court may extend the time to file a motion . . . on a showing of good cause." *Id.*(B). Discovery is suspended until the court rules on the motion. *Id.*(C). Additionally, a hearing on a motion to dismiss filed pursuant to the OCPA must be set within sixty (60) days of the date of service of the motion, but the court may extend the deadline to ninety (90) days after the date of service if docket conditions warrant an extension or to one hundred twenty (120) days in the event the court allows limited discovery. *Id.* § 1433.

¶ 5 In their OCPA Motion to Dismiss, Defendants argued that Plaintiffs' claims must be dismissed because the lawsuit was filed in response to Defendants' exercise of the right of free speech and that Plaintiffs' could not meet their burden to show a *prima facie* case of libel *per se* because (1) Plaintiffs did not

---

1. Each of the Defendants filed motions to dismiss Plaintiffs' original Petition. Those motions to dismiss were not included in the record on appeal, but in their Response to Defendants' OCPA Motion to Dismiss, which was included in the record on appeal, Plaintiffs state that these motions were denied.

2. The OCPA went into effect on Nov. 1, 2014.

3. Defendants have pursued their appeal under Supreme Court Rule 1.36, which allows for an accelerated procedure for appeals from grants of summary judgments and certain other dismissals. Nothing in Supreme Court Rule 1.36 or in the OCPA provides this is the appropriate appellate procedure for an appeal from a *denial* of a motion to dismiss pursuant to the newly enacted OCPA. However, neither the Plaintiff nor the State of Oklahoma, as Intervenor, objected to this procedure or otherwise requested to file an appellate brief in this matter. Given this and the OCPA's mandate that "[a]n appellate court shall expedite an appeal . . . from a trial court order on a motion to dismiss a legal action filed pursuant to [the OCPA] or from a trial court's failure to rule on that motion" within thirty (30) days of the hearing on the motion, 12 O.S. 1437, the accelerated procedure in Supreme Court Rule 1.36 is appropriate. This accelerated procedure has been applied to other kinds of appeals not specifically listed in Supreme Court Rule 1.36. *See Towne v. Hubbard*, 1999 OK 10, 7, 977 P.2d 1084 (application for extraordinary writ to prevent removal of attorney of record converted to appeal and placed on accelerated appeal schedule to be governed by provisions of Sup. Ct. R. 1.36, but permitting briefs on appeal).

have a cognizable claim for libel *per se*; (2) Plaintiffs could not prove that Defendants' speech accused them of indictable crimes; (3) there was no evidence of actual malice;[4] and (4) Defendants' publications were privileged.

¶6 On January 20, 2015, Plaintiffs filed their Response in Opposition to Defendants' OCPA Motion to Dismiss. Plaintiffs set forth their argument, including evidentiary material, that they could establish a *prima facie* case of libel *per se* and also argued that the OCPA did not apply to this case and was otherwise unconstitutional. Specifically, Plaintiffs argued that the OCPA, which had an effective date of November 1, 2014, could not apply retroactively because it affected substantive rights and that the law violated various provisions of the Oklahoma Constitution: Okla. Const. art. 5, 46 (prohibition on special laws); Okla. Const. art. 2, 6 (constitutional guarantee of equal and open access to the courts); and Okla. Const. art. 2, 19 (right to trial by jury).

¶7 On February 5, 2015, the trial judge presiding over the matter at that time, Hon. Linda G. Morrissey, granted Plaintiffs' request for recusal pursuant to District Court Rule 15. On February 6, 2015, the State of Oklahoma, through the Attorney General's office, filed notice with the trial

court that it planned to intervene in the case and file a brief supporting the constitutionality of the OCPA in response to Plaintiffs raising the issue in their Response to Defendants' OCPA Motion to Dismiss. The Attorney General filed his brief February 9, 2015. On February 20, 2015, this matter was assigned to Hon. Daman H. Cantrell. Defendants filed their Reply in Support of their OCPA Motion to Dismiss March 2, 2015. During this time, no hearing on the OCPA Motion to Dismiss was scheduled or conducted. On March 10, 2015, the trial court entered a minute order noting that, because no hearing had been held within sixty (60) days of the date of service of the motion, there was no action for the court to take.[5] This minute order was ultimately followed by a written order entered July 15, 2015 stating that, because no hearing had been scheduled or conducted on Defendants' OCPA Motion to Dismiss within sixty (60) days of the date of service of the motion and because docket conditions did not warrant an extension to allow for a hearing within ninety (90) days of service, the OCPA Motion to Dismiss was "deemed denied by operation of law."[6]

¶8 Defendants filed their appeal to the July 15, 2015 order pursuant to 12 O.S. Supp. 2015 1437, which specifically provides for an appeal from a trial court's denial of a motion

---

4. Defendants argued that because Plaintiffs, who were then serving as District Attorney and Assistant District Attorney, were public officials, they must show actual malice. *See N.Y. Times Co. v Sullivan*, 376 U.S. 254, 279–80, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964) (requiring public official bringing libel claim to prove defamatory statement was made "with 'actual malice'—that is, with knowledge that it was false or with reckless disregard of whether it was false or not").

5. The Certificate of Service showed the OCPA Motion to Dismiss was mailed to Plaintiffs' counsel on December 29, 2014. The sixty (60) day deadline for a hearing to be conducted, including the additional three (3) days allowed for service by mail, 12 O.S. 2006(D), expired March 2, 2015.

6. We note that Plaintiffs' and Defendants' respective briefs filed in response to the State of Oklahoma's brief filed in its capacity as Intervenor supporting the constitutionality of the OCPA were filed *after* entry of the trial court's written order denying Defendants' OCPA Motion to Dismiss. Generally, the purpose of the accelerated procedure available under Supreme Court Rule 1.36 is to make available to the appellate court the pleadings and motions which were reviewed

by the trial court in making its decision on the appealable order. *See O'Feery v. Smith*, 2001 OK CIV APP 142, 3, 38 P.3d 242 (noting that Sup. Ct. R. 1.36 only permits the appellate court to consider the record which was considered by the trial court in its decisional process). *See also* 6 Harvey D. Ellis, Jr. & Clyde A. Muchmore, *Oklahoma Appellate Practice*, 19:1 ("[T]he appellate court reviews precisely the documents that were presented to the trial court, and renders its decision on the legal question presented.") None of the briefs filed in response to the State's brief could possibly have been considered by the trial court in rendering its decision. However, we need not address whether the inclusion of these response briefs in the record on appeal is appropriate because each of them primarily addressed the constitutionality of the OCPA. And because we find that the OCPA cannot be applied retroactively to this case, we need not address the constitutionality of the OCPA. *E.g. In re A.N.O.*, 2004 OK 33, 14, 91 P.3d 646 ("Courts, of course, will pass upon the constitutionality of a statute only when it is necessary to a determination on the merits.").

to dismiss based on the OCPA. Defendants raise several issues on appeal: whether the OCPA may be applied retroactively; whether the OCPA violates the Oklahoma Constitution as argued below by Plaintiffs; and whether Plaintiffs met their evidentiary burden as set forth in the OCPA.

¶ 9 After the appeal was filed, Plaintiffs filed a motion to dismiss the appeal, or, alternatively, to limit the scope of the appeal to exclude the constitutional and evidentiary issues raised in the Petition in Error. A ruling on the motion was deferred to the decisional stage. Specifically, Plaintiffs argued that we do not have appellate jurisdiction over the matter because the OCPA requires the special motion to dismiss to be filed within sixty (60) days of the date of service of the legal action. *See* 12 O.S. Supp. 2015 1432(B). It is Plaintiffs' position that, because Defendants' OCPA Motion to Dismiss was not filed within that sixty (60) day window, the OCPA does not apply to the case, and, thus, Defendants have no avenue to appeal the denial of a motion to dismiss.

¶ 10 As Plaintiffs conceded in their motion to dismiss the appeal, the OCPA grants the trial court the power to "extend the time to file [a motion to dismiss pursuant to the OCPA] ... under a showing of good cause." 12 O.S. Supp. 2015 1432(B). When

Defendants filed their OCPA Motion to Dismiss, they argued "good cause" existed for the late filing due, in part, to the fact that the OCPA became effective after the commencement of the litigation. Thus, it would have been impossible for Defendants to file their OCPA Motion to Dismiss within sixty (60) days of service.[7] Notably, Plaintiffs did not present any argument to the trial court that Defendants failed to demonstrate "good cause" to extend the sixty (60) day filing deadline. Error not raised before the trial court may not be considered for the first time on appeal. 12 O.S. 992; *Arkansas Louisiana Gas Co. v. Cable*, 1978 OK 133, 585 P.2d 1113. Accordingly, this portion of Plaintiffs' motion to dismiss the appeal is denied.[8] As to Plaintiffs' alternative request for relief in their motion to dismiss the appeal, because we find that the OCPA does not apply retroactively, we will not address the constitutional or evidentiary issues raised on appeal.[9]

## STANDARD OF REVIEW

¶ 11 At the outset we note the trial court's order denying Defendants' OCPA Motion to Dismiss did not include specific findings that the OCPA applied · retroactively. However, the trial court's order implicitly recognized the OCPA applied retroactively by (1) finding that Defendants' OCPA Motion to Dismiss

---

7. Plaintiffs filed their original Petition on March · 3, 2013 with service being accomplished on the Defendants shortly thereafter according to the online docket sheet. Plaintiffs filed their First Amended Petition on August 8, 2013. The Certificate of Service states that the First Amended Petition was mailed August 7, 2013. Because, due to the November 1, 2014 effective date of the OCPA, it would have been impossible for Defendants to file their special motion to dismiss in response to either the original Petition or First Amended Petition within sixty (60) days of service, we need not address whether Defendants would have been required to file their OCPA Motion to Dismiss in response to the original Petition. *See generally Better Business Bureau of Metro. Dallas, Inc. v. Ward*, 401 S.W.3d 440, 443 (Tex.App.–Dallas 2013) (deciding that the claims of a plaintiff who joined a lawsuit after the effective date of Texas's version of the Act were subject to dismissal under the Act, even though the underlying lawsuit was filed before the statute's effective date).

8. We also note that Texas appellate courts have, when interpreting Texas's version of the Act, The Texas Citizens Participation Act ("TCPA"), Tex.

Civ. Prac. & Rem. Code 27.001–27.011, held that appellate courts have jurisdiction over an appeal challenging the applicability of the TCPA. *Schimmel v. McGregor*, 438 S.W.3d 847, 855 (Tex.App.–Houston [1st Dist] 2014) (noting that an appellate court reviews *de novo* a trial court's determination of whether the TCPA applied). *But see Jardin v. Marklund*, 431 S.W.3d 765, 774 (Tex. App.–Houston [14th Dist.] 2014) (holding that the appellate court did not have jurisdiction over an appeal of the denial of a motion to dismiss filed pursuant to the TCPA because the trial court held that the TCPA did not apply).

9. The additional issues Defendants raised on appeal related to (1) the sufficiency of the evidence presented by Plaintiffs to support their *prima facie* case of libel *per se*; (2) whether Defendants' publications were privileged under statutory, common, or federal law; and (3) whether Plaintiffs could lawfully maintain such a suit to "punish" their critics. We will not address these issues because we find the OCPA cannot be applied retroactively.

was "deemed [denied] by operation of law" because no hearing was held in the time frame required by the OCPA and (2) by specifically stating the Defendants had the right to appeal such denial pursuant to the OCPA. Accordingly, this appeal requires us to determine whether the OCPA applies retroactively to a "legal action"[10] filed before the November 1, 2014 effective date of the OCPA, which, in turn, requires a determination of whether the OCPA solely affects procedure or whether it affects substantive rights. These issues are matters of first-impression in Oklahoma.[11] Such questions of statutory construction present a question of law that we review *de novo*. *Humphries v. Lewis*, 2003 OK 12, 3, 67 P.3d 333. "Under this standard, we have plenary, independent and nondeferential authority to determine whether the trial court erred in its legal ruling." *Fanning v. Brown*, 2004 OK 7, 8, 85 P.3d 841, 845 (internal citations omitted).

## ANALYSIS

¶ 12 "The general rule in Oklahoma is that statutes, and amendments, are to be construed to operate only prospectively unless the Legislature clearly expresses a contrary intent." *Welch v. Armer*, 1989 OK 117, 27, 776 P.2d 847. "If doubt exists, it must be resolved against a retroactive effect." *Forest Oil Corp. v. Corp. Comm'n of Okla.*, 1990 OK 58, 11, 807 P.2d 774 (internal citations omitted). "However, remedial or

procedural statutes which do not create, enlarge, diminish, or destroy vested rights may operate retrospectively and apply to pending actions or proceedings." *Id.* "A substantive change that alters the rights or obligations of a party cannot be viewed as solely a remedial or procedural change and cannot be retrospectively applied." *Sudbury v. Deterding*, 2001 OK 10, 19, 19 P.3d 856 (*citing Welch*, 1989 OK 117, 27–28, 776 P.2d 847). "A purely procedural change is one that affects the remedy only, and not the right." *Forest Oil Corp.*, 1990 OK 58, 11, 807 P.2d 774. Defendants argue that the OCPA is solely procedural in nature, and, thus, can apply retroactively to legal actions filed before the November 1, 2014 effective date. Unsurprisingly, Plaintiff argues that the OCPA affects substantive rights and cannot be applied retroactively.

¶ 13 Section 1430(B) articulates the purpose of the OCPA:

The purpose of the Oklahoma Citizens Participation Act is to encourage and safeguard the constitutional rights of persons to petition, speak freely, associate freely and otherwise participate in government to the maximum extent permitted by law and, at the same time, protect the rights of a person to file meritorious lawsuits for demonstrable injury.

12 O.S. Supp. 2015 1430(B). Laws like the OCPA are drafted to counter what are commonly known as "strategic lawsuits against

---

10. The OCPA provides that the special motion to dismiss may be filed in response to any "legal action," 12 O.S. Supp. 2015 1432, and further defines "legal action" as "a lawsuit, cause of action, petition, complaint, cross-claim, counterclaim or any other judicial pleading or filing that requests legal or equitable relief." *Id.*(6). Here, as discussed in note 6, *supra*, it would have been impossible for Defendants to file their OCPA Motion to Dismiss within sixty (60) days of the date of service of either the original Petition or First Amended Petition.

11. The only court to examine the OCPA has been the Western District of Oklahoma. *Bruning v. City of Guthrie*, No. CIV–15–0003–HE, 2015 WL 4925995, at *10 (W.D. Okla. Aug. 18, 2015). There, the federal district court tersely concluded that, for purposes of federal diversity jurisdiction, the OCPA was a procedural law that could not supplant the Federal Rules of Civil Procedure. The Court relied on two Texas cases for this conclusion: *Ruder v. Jordan*, No. 05–14–

01265–CV, 2015 WL 4397636 (Tex.App. July 20, 2015) and *In re Lipsky*, 460 S.W.3d 579 (Tex. 2015). Certainly, both of those cases have language describing the TCPA as a procedural mechanism for the early dismissal of meritless litigation which implicates First Amendment rights, but neither case squarely addresses whether the TCPA is a substantive or procedural statute for purposes of retroactive application. Rather, both cases address the quantum of proof required for the claimant to avoid dismissal by establishing "clear and specific evidence [of] a *prima facie* case for each essential element of the claim in question." *Ruder*, 2015 WL 4397636, at *2; *Lipsky*, 460 S.W.3d at 589–90. Notably, the *Bruning* court also stated that, even if the defendant correctly characterized the OCPA as substantive, the law could not apply because the OCPA became effective after the events underlying the plaintiff's claims occurred. *Bruning*, 2015 WL 4925995, at *10.

public participation" or "SLAPP suits." *See generally* Laura Long, *Slapping Around the First Amendment: An Analysis of Oklahoma's Anti–SLAPP Statute and Its Implications on the Right to Petition*, 60 Okla. L. Rev. 419 (2007) (discussing the limited scope of Oklahoma's anti-SLAPP statute as it existed then). "The defining characteristic of a SLAPP suit is its purpose to deter public participation in decision-making forums. . . . SLAPP suits are designed to intimidate the petitioners into dropping their initial petitions due to the expense and fear of extended litigation." *Id.* at 420. Libel is a common cause of action in SLAPP suits. *Id.*

¶ 14 "The risks identified in the context of anti-SLAPP litigation are: 1) there is a danger that men and women will be chilled from exercising their rights to petition the government by fear of the costs and burdens of the resulting litigation; and 2) that unscrupulous lawyers and litigants will be encouraged to use meritless lawsuits to discourage the exercise of first amendment rights." *Metabolic Research, Inc. v. Ferrell*, 693 F.3d 795, 799–800 (9th Cir. 2012) (*citing John v. Douglas County Sch. Dist.*, 125 Nev. 746,219 P.3d 1276, 1282 (2009)). Accordingly, the OCPA employs a special motion to dismiss with expedited trial court and appellate review and the stay of discovery pending a decision on the motion to dismiss [12] to benefit targets of SLAPP suits by "reduc[ing] the time commitment and the financial resources [necessary] to combat the SLAPP suits, thereby lessening the chill effect on petitioning activi-

ty." Long, *supra*, at 438–39. While there is no doubt that such mechanisms are procedural, they affect substantive rights.[13] Together, the OCPA's provisions do far more than simply provide procedural safeguards for defendants in cases involving First Amendment rights.[14]

¶ 15 First, 1434 creates a new defense to causes of action involving First Amendment rights, effectively providing immunity from suit.[15] Subsection B commands the trial court to dismiss a legal action "if the moving party shows by a preponderance of the evidence that the legal action is based on, relates to or is in response to the party's exercise of: 1. The right of free speech; 2. The right to petition; or 3. The right of association." 12 O.S. Supp. 2015 1434(B). There are no Oklahoma Supreme Court decisions precisely on point, but several cases lead us to conclude that the creation of this defense cannot be viewed as merely a procedural change.

¶ 16 Much of Oklahoma's jurisprudence on the difference between procedural and substantive laws can be found in the context of workers' compensation law. In *Cole v. Silverado Foods*, 2003 OK 81, 78 P.3d 542, the Oklahoma Supreme Court found that a statutory amendment, which reduced from five years to three years the limitations period to prosecute the unrecovered portions of a workers' compensation claim, could not be applied to a pending claim. The Court came to this decision, in part, because the change in the statute "[stood] as an employer's liability-defeating defense against an employee's

12. 12 O.S. Supp. 2015 1432–1444.

13. Recently, the United States District Court for the Southern District of Texas found that the TCPA was a substantive law such that it must be applied in a federal diversity suit. *Williams v. Cordillera Communications, Inc.*, No.2:13–CV–124, 2014 WL 2611746, at *1 (S.D.Tex. June 11, 2014). The *Williams* court opined that:

"The TCPA is procedural in that it has specific time constraints, places a stay on discovery, and requires an expedited decision with an accelerated decision process. However, these procedural features are designed to prevent substantive consequences—the impairment of First Amendment rights and the time and expense of defending against litigation that has no demonstrable merit under state law regarding defamation." *Id.* at *1 (internal citations omitted).

14. Many commentators have appropriately referred to "defendants" in SLAPP suits as "targets" rather than defendants because these types of lawsuits often arise as counterclaims or cross-claims. Long, *supra*, at 420. The OCPA also recognizes that these types of lawsuits can arise in different forms and have included a broad definition of "legal action" to which the special motion to dismiss can be filed in response. *See* 12 O.S. Supp. 2015 1431(6), 1432. We use the term "defendants" in the broadest sense of the word with the intention that it include parties against whom counterclaims or cross-claims are filed.

15. *See* Colin Quinlan, *Erie and the First Amendment: State Anti–SLAPP Laws in Federal Court After* Shady Grove, 114 Colum. L. Rev. 367, 376, n. 54 (noting that the procedural protections in anti-SLAPP laws "operate much like determinations of absolute or qualified immunity").

untimely quest for [relief]." *Id.* at ¶13. The Court explained:

"A statutory defense constitutes an accrued right. To modify one's defense against a claim changes its character and potency.... Retroactive application of [the amended statute] would make the employer's defense much more extensive that it stood at the time the claim was brought. The amendment also affects the merits of [the employee's] claim. She would have to confront a different defense. Because the amendment refashions [the statute] into a different and more extensive liability-defeating mechanism, it destroy's claimants's right to present her claim free from being subjected to new and more extensive instruments of destruction. Inasmuch as the amended version of [the statute] operates here on rights in existence, its terms are subject solely to prospective application." *Id.* (Footnotes omitted.)

The Court noted that "[m]erits are the elements or grounds of a claim or defense." (*Id.* at n. 27 (citing Black's Law Dictionary 1003) (7th ed. 1999)). *Cole*'s reasoning persuades us that the new statutory defense created by the OCPA must be viewed as having an effect on substantive rights and, thus, must have prospective affect only.

¶ 17 Cases outside of the workers' compensation realm also convince us of the OCPA's substantive effect. In *Walls v. American Tobacco Co.*, 2000 OK 66, 11 P.3d 626, the Supreme Court held that the 1988 amendment to the Oklahoma Consumer Protection Act "which changed [the law] to permit a private right of action where there was none before, [constituted] a substantive change in the law" and could not be applied retroactively. *Id.* at ¶24. The Court relied on *Hammons v. Muskogee Medical Center Authority*, 1985 OK 22, 6–7, 697 P.2d 539, where the Court determined the 1979 amendment to the Political Subdivision Tort Claims Act, which in-

cluded the defendant hospital within its protection, was not merely a procedural change because it barred a plaintiff's cause of action against the hospital unless the notice provisions of the law were followed. We find these situations analogous to the case at bar where a change in the law created a new defense to a cause of action which did not exist before the law's enactment. Certainly, the OCPA permits the cause of action to proceed normally if the shifting evidentiary burden is met, 12 O.S. Supp. 2015 1434(C), but the fact remains that a defendant in a lawsuit implicating First Amendment rights now has a defense which was previously unavailable to him. We cannot view this newly created defense as merely a procedural change.

¶ 18 Second, 1438 of the Act allows the target of a SLAPP suit to recover damages by providing for a mandatory award of attorney fees, costs, other reasonable expenses, and sanctions in the event a motion to dismiss filed pursuant to the OCPA is granted. 12 O.S. Supp. 2015 1438.[16] We view this change to also affect substantive rights.[17] Earlier Oklahoma Supreme Court jurisprudence supports this conclusion. In *Thomas v. Cumberland Operating Company*, 1977 OK 164, 569 P.2d 974, the Court found that a statutory amendment which permitted newly recoverable damages upon the wrongful death of a child, which were non-existent before the amendment, created and enlarged substantive rights and operated only prospectively. Similarly, the Court's reasoning in *Sudbury v. Deterding* is persuasive. There, the change in the statute increased the measure of damages "for wrongful injuries to timber upon the land of another." *Sudbury*, 2001 OK 10, 18, 19 P.3d 856. The Supreme Court reasoned that because the amended statute "increase[d] the potential damages ... the amendment cannot be viewed as a merely remedial or procedural change. The statute alters the liability of a defendant

---

**16.** Section 1438 also provides for a discretionary award of attorneys fees and costs if the moving party uses the motion to dismiss improperly.

**17.** *See Delta Chemical Corp. v. Lynch*, 979 So.2d 579, 587, n. 7 (La. Ct. App. 2008) (noting that the amendment to Louisiana's anti-SLAPP law, which allowed a claimant to recover mandatory attorneys fees if she was successful on the special motion to dismiss where, before, a prevailing claimant could only recover if the court found the motion was frivolous or solely intended to cause unnecessary delay, was a substantive change in the law and could be applied prospectively only).

making the wrong potentially more costly."[18] *Id.* at ¶19. The court concluded that the amendment could not apply retroactively. *Id.*

¶ 19 As in *Thomas*, 1977 OK 164, 569 P.2d 974, 10, the damages now available to targets of SLAPP suits did not exist before the law's enactment. And similar to *Sudbury*, 2001 OK 10, 19, 19 P.3d 856, the change in the law "alters the liability" of a claimant in a legal action involving First Amendment rights. Now, in the event the special motion to dismiss is granted, the claimant is responsible for mandatory attorney fees, costs, other reasonable expenses, and sanctions, thus "making [such a suit] potentially more costly."[19] *Sudbury*, 2001 OK 10, 19, 19 P.3d 856. While targets of lawsuits implicating First Amendment rights have always been able to pursue monetary sanctions, including attorney fees and other expenses, against filers of frivolous claims pursuant to 12 O.S. 2011 or 12 O.S. 2011.1, such monetary sanctions are not mandatory, but instead are available only upon motion and subject to the trial court's discretionary determination that the claim or defense was "frivolous." The OCPA does not require such a finding when a special motion to dismiss is granted. Instead, the trial court must award such damages leaving only the appropriate amount of the award to the discretion of the trial court. 12 O.S. Supp. 2015 1438. Accordingly, we find that the newly created damages available to parties who successfully move for dismissal pursuant to the OCPA affect substantive rights. Because the OCPA affects substantive rights through a newly created defense and newly available damages, the OCPA must have prospective effect only, applying only to "legal action[s]" filed after the November 1, 2014 effective date.

¶ 20 In addition to Oklahoma, twenty-eight (28) states have adopted anti-SLAPP laws in some form.[20] Defendants relied on cases from

---

18. Additionally, the 1995 statutory amendment provided for the mandatory award of attorney fees to the prevailing party. *Compare* 23 O.S. 1991 72 *with* 23 O.S. Supp. 1995 72.

19. We are also cognizant of United States Supreme Court precedent which provides that state statutes authorizing attorney fees are substantive in nature when they reflect a substantial policy of the state. See *Alyeska Pipeline Serv. Co. v. Wilderness Society*, 421 U.S. 240, 259, n. 31, 95 S.Ct. 1612, 44 L.Ed.2d 141 (1975) (noting that, in federal cases where jurisdiction is based on the diversity of citizenship of the parties and where federal courts must apply state substantive law, "state law denying the right to attorney's fees or giving a right thereto, which reflects a substantial policy of the state, should be followed").

20. Ariz. Rev. Stat. Ann. 12–751 – 12–752 (Westlaw through First Special Sess. of Fifty–Second Legislature (2015)); Ark. Code. Ann. 16–63–501 – 16–63–508 (Westlaw through Nov. 1, 2015 changes); Cal. Civ. Pro. Code. 425.16–425.18 (Westlaw through 2015 Reg. Sess. Laws and Ch. 1 of 2015–2016 2nd. Ex. Sess.); Del. Code. Ann. tit. 10, 8136–8138 (Westlaw through 80 Del. Laws ch. 194 (2015)); Fla. Stat. 768.295, 720.304(4) (Westlaw through 2015 1st Reg. Sess. and Special A Sess. of the Twenty–Fourth Legislature); Ga. Code. Ann. 9–11–11.1 (Westlaw through Regular Sess. of the 2015 Legislative Sess.); Haw. Rev. Stat. 634F–1 – 634F–4 (Westlaw through 2015 Reg. Sess.); 735 Ill. Comp. Stat. 110/1–110/99 (Westlaw through 2015 Ill. Legis. Serv. P.A. 99–491 (West)); Ind. Code. 34–7–7–1 – 34–7–7–10 (Westlaw through 2015 Reg. Sess. of the 119th General Assembly); La. Code Civ. Proc. Ann. art. 971 (Westlaw through 2015 Reg. Sess.); Me. Rev. Stat. Ann. tit. 14, 556 (Westlaw through 2015 First Regular Sess. of the 127th Legislature); Md. Code Ann., Cts. & Jud. Proc. 5–807 (Westlaw through 2015 Regular Sess.); Mass. Gen. Laws. Ch. 231, 231 (Westlaw through Chapter 161 of the 2015 1st Annual Sess.); Minn. Stat. 554.01–554.06 (Westlaw through 2015 First Special Sess.); Mo. Rev. Stat. 537.528 (Westlaw through 2015 Veto Sess. Of the 98th General Assembly); Neb. Rev. Stat. 25–21,-241 – 25–21,246 (Westlaw through 1st Regular Sess. of the 104th Legislature (2015)); Nev. Rev. Stat. 41.635–41.670 (Westlaw through the 78th Regular Session (2015)); N.M. Stat. 38–2–9,1 – 38–2–9.2 (Westlaw through First Special Sess. of the 52nd Legislature (2015)); N.Y. Civ. Rights 70–a, 76–a (Westlaw through 2015); Or. Rev. Stat. 33.150–31.155 (Westlaw through 2015 Reg. Sess.); 27 Pa. Cons. Stat. 7707, 8301–8305 (Westlaw through 2015 Reg. Sess. Acts 1 to 70); R.I. Gen. Laws. 9–33–1 – 9–33–4 (Westlaw through ch. 285 of the Jan. 2015 Sess.); Tenn. Code. Ann. 4–21–1001 – 4–21–1004 (Westlaw through 2015 First Reg. Sess.); Tex. Civ. Prac. & Rem. Code 27.001–27.011 (Westlaw through 2015 Reg. Sess. of the 84th Legislature); Utah Code Ann. 78B–6–1401 – 78B–6–1405 (Westlaw through 2015 First Special Sess.); Vt. Stat. Ann. Tit. 12, 1041 (Westlaw through the First Sess. of the 2015–2016 Vt. General Assembly (2015)); Wash. Rev. Code. 4.24.510–4.24.525 (Westlaw through 2015 Regular Sess. and Special Sess.)(Wash. Rev. Code. 4.24.525, which provides for a special motion to strike and shifting evidentiary burdens, held unconstitutional in *Davis v. Cox*, 183 Wash.2d 269, 351 P.3d 862 (2015) for violating the Washington state constitution's right to trial by jury by requiring a trial judge to invade the jury's province of resolving disputed facts).

some of these jurisdictions to support their argument that anti-SLAPP laws are procedural in nature and can be applied retroactively. *Davis v. Parks*, Case No. 61150, 2014 WL 1677659 (Nev. April 23, 2014) (unpublished) (*relying on John v. Douglas County Sch. Dist.*, 125 Nev. 746, 219 P.3d 1276 (2009)); *Makaeff v. Trump Univ., LLC*, 715 F.3d 254 (9th Cir. 2013) (Kozinski, C.J., concurring) (arguing California's anti-SLAPP law should be considered procedural for purposes of federal courts' *Erie* analysis); *Shoreline Towers Condominium Ass'n v. Gassman*, 404 Ill.App.3d 1013, 344 Ill.Dec. 441, 936 N.E.2d 1198 (2010); *Nguyen v. County of Clark*, 732 F.Supp.2d 1190 (W.D. Wash. 2010) (applying Washington's anti-SLAPP law); *Robertson v. Rodriguez*, 36 Cal.App.4th 347, 42 Cal.Rptr.2d 464 (1995). These cases do not persuade us that the OCPA is a purely procedural statute.

¶ 21 We note that *Davis*, 2014 WL 1677659, at *3 (*citing John*, 219 P.3d at 1283–84), *Shoreline*, 344 Ill.Dec. 441, 936 N.E.2d at 1208, and *Makaeff*, 715 F.3d at 273, relied on California case law to support their positions that the anti-SLAPP laws in Nevada, Illinois, and California are procedural in nature. The *Davis* and *Shoreline* courts noted the substantial similarity between California's anti-SLAPP law and those of Nevada and Illinois, respectively. Our review of California case law, *e.g. Robertson*, 42 Cal.Rptr.2d at 469, revealed the analysis performed by California courts simply does not take into account the new defense provided by the anti-SLAPP laws nor does it consider the mandatory award of attorneys fees. *See Adelson v. Harris*, 973 F.Supp.2d 467, 493, n. 21 (S.D.N.Y. 2013) (noting that Judge Kozinski's concurring opinion in *Makaeff* did not take into account that California's statute authorizes a mandatory award of attorney's fees to a successful movant and that such award is considered to reflect the substantive law of a state). Rather, California courts seem to jump to the conclusion that the law is simply "a procedural mechanism for determining

whether a plaintiff can demonstrate sufficient facts to establish a *prima facie* case to permit the matter to go to a trier of fact." *Id.* See *John*, 219 P.3d at 1284 (relying on California case law to support its position that neither California's nor Nevada's anti-SLAPP laws "created a substantive cause of action or defense" but "[i]nstead ... create[d] a procedural mechanism to prevent wasteful and abusive litigation by requiring the plaintiff to make an initial showing of merit"). The rationale that these courts rely on is simply inconsistent with Oklahoma law. *See King Mfg. v. Meadows*, 2005 OK 78, n. 10, 127 P.3d 584 (ignoring Wyoming case law that was "unconvincing and inconsistent with controlling Oklahoma law"). As discussed above, under Oklahoma law, the addition of a new defense and mandatory attorney fees reflects a substantive change which can be applied prospectively only.

¶ 22 Defendants' reliance on *Nguyen* is similarly misplaced. It must be noted that since this matter has been decided by the trial court, the Washington Supreme Court has struck down Washington's anti-SLAPP law as unconstitutional. *Davis v. Cox*, 183 Wash.2d 269, 351 P.3d 862 (2015). *See also* note 18, *supra*. Washington's law provides for a special motion to strike and shifting evidentiary burdens which the Washington court concluded violated the state constitutional right to trial by jury by requiring a trial judge to invade the jury's province of resolving disputed facts. *Id.* at 864, 874. Consequently, the persuasive value of *Nguyen* is much diminished. Also, the analysis of *Nguyen* itself is flawed. The federal district court applied Washington's anti-SLAPP law under the conclusory assumption that the "statute is procedural and does not affect a vested right, and therefore is remedial in nature and applies retroactively...." *Nguyen*, 732 F.Supp.2d at 1194. Like the California cases relied on by Defendants and relied on by the courts in *Davis*, *Makaeff*, and *Shoreline*, *Nguyen* similarly failed to consider that the

In addition to these statutory enactments, the Colorado Supreme Court set forth a rule requiring a "suing party, when confronted with a motion to dismiss predicated on the First Amendment right to petition the government for redress of grievances, to demonstrate the constitutional viability of his claim." *Protect Our Mountain Environment, Inc. v. Dist. Ct.*, 677 P.2d 1361, 1368 (Colo. 1984).

anti-SLAPP laws added a new defense and mandatory attorney's fees award.

¶ 23 Of all the other states which have adopted some version of the Act, Texas' version, the TCPA, is almost identical to the OCPA. Indeed, the only differences appear to be minor changes to the order the various sections of the Act appear and substitutions for statutory references for internal consistency.[21] While Texas courts have no decisions analyzing whether the TCPA is a procedural or substantive statute, they have recognized that the TCPA has prospective effect only. As discussed in note 6, *supra*, the Texas Court of Appeals determined that the claims of a plaintiff who joined a lawsuit after the effective date of the TCPA were subject to dismissal under the Act even though the underlying lawsuit was filed before the statute's effective date. *Better Business Bureau*, 401 S.W.3d at 443. The Texas court relied on language in the session laws which provided "[t]he change in law made by this Act applies only to a legal action filed on or after the effective date [June 17, 2011] of this Act. A legal action filed before the effective date of this Act is governed by the law in effect immediately before that date, and that law is continued in effect for that purpose." *Id.* (*quoting* Act of June 17, 2011, 82nd Leg., R.S., ch. 341, 3, 2011 Tex. Gen. Laws 960, 963). While Oklahoma's session laws for the OCPA do not contain identical language, they nonetheless clearly provide for an effective date. 2014 Okla. Sess. Law. Ch. 107, 12 ("This act shall become effective November 1, 2014."). This provides additional support that the OCPA must have prospective effect only.

## CONCLUSION

¶ 24 The trial court denied Defendants' OCPA Motion to Dismiss because the motion was not set for hearing within sixty (60) days of service of the motion as required by the OCPA. 12 O.S. Supp. 2015 1433. Even though we find that the OCPA cannot apply retroactively to Plaintiffs' claims, we nonetheless AFFIRM the decision of the trial court deny-

ing Defendants' OCPA Motion to Dismiss. Because that motion was based on, and authorized by, the OCPA which does not apply to this case, it was properly denied. See *Harvey v. City of Okla. City*, 2005 OK 20, 12, 111 P.3d 239 ("It is well settled that a correct judgment will not be disturbed on review, even when the trial court applied an incorrect theory or reasoning in arriving at its conclusion; an unsuccessful party cannot complain of a trial court's error when he would not have been entitled to succeed anyway.").

¶ 25 AFFIRMED AND REMANDED FOR FURTHER PROCEEDINGS.

GOREE, J., and JOPLIN, J. (sitting by designation), concur.

---

**21.** For example, the TCPA puts its "Definitions" section, Tex. Civ. Prac. & Rem. Code § 27.001, first and its "Purpose" section, *id.*. § 27.002, second while the OCPA sets forth the purpose first, 12 O.S. Supp. 2015 § 1430, and its "Definitions" section second, *id.* § 1431.