**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

METABOLIC RESEARCH, INC.,
          *Plaintiff-Appellee,*

v.

SCOTT J. FERRELL; MICHAEL A.
CAMPOS; THOMAS HESS; SARA
JORDAN,

          *Defendants-Appellants.*

No. 10-16209

D.C. No.
2:09-cv-02453-JCM-
PAL

OPINION

Appeal from the United States District Court
for the District of Nevada
James C. Mahan, District Judge, Presiding

Argued and Submitted
June 17, 2011—San Francisco, California

Filed February 9, 2012

Before: Jay S. Bybee and Mary H. Murguia, Circuit Judges,
and James K. Singleton, Senior District Judge.*

Opinion by Judge Singleton

---

*The Honorable James K. Singleton, Senior District Judge for the U.S.
District Court for Alaska, sitting by designation.

**COUNSEL**

Bevin E. Allen, Khorrami Pollard & Abir LLP, Las Angeles, California for the appellants.

Beverly Salhanick, Las Vegas, Nevada, for the appellee.

**OPINION**

SINGLETON, District Judge:

In this decision, we determine whether an order denying a pretrial special motion to dismiss under Nevada's anti-SLAPP statute,[1] Nev. Rev. Stat. §§ 41.635-670, is immediately appealable under the collateral order doctrine first recognized in *Cohen v. Beneficial Industrial Loan Corp.*, 337 U.S. 541, 546-47 (1949). We previously considered related issues under

---

[1]"SLAPP" is an acronym for "strategic lawsuit against public participation." *United States ex rel. Newsham v. Lockheed Missiles & Space Co.*, 190 F.3d 963, 965 n.2 (9th Cir. 1999). "A SLAPP lawsuit is characterized as 'a meritless suit filed primarily to chill the defendant's exercise of First Amendment rights.' " *John v. Douglas Cnty. Sch. Dist.*, 219 P.3d 1276, 1280 (Nev. 2009) (citation omitted). The hallmark of a SLAPP lawsuit is that it is filed to obtain a financial advantage over one's adversary by increasing litigation costs until the adversary's case is weakened or abandoned. *Lockheed Missiles & Space Co.*, 190 F.3d at 970.

Oregon law in *Englert v. MacDonell*, 551 F.3d 1099, 1103-07 (9th Cir. 2009), and California law in *Batzel v. Smith*, 333 F.3d 1018, 1025-26 (9th Cir. 2003). We find that Nevada's statute is similar to Oregon's, and dismiss the appeal for lack of jurisdiction.

## I. FACTUAL AND PROCEDURAL HISTORY

On October 20, 2009, Scott J. Ferrell, an attorney practicing law in Orange County California, sent "demand letters" to Metabolic Research, Inc. ("Metabolic"), at its address in Las Vegas, Nevada, and to General Nutrition Centers, Inc. ("GNC"), at its address in Pittsburgh, Pennsylvania. The demand letters purported to notify the recipients that they had violated California Civil Code §§ 1750-1756, the California Consumer Legal Remedies Act ("CLRA"), by falsely advertising the properties and potential benefits of a product named Stemulite, which they marketed as a natural fitness supplement. Ferrell represented that he was acting on behalf of Michael Campos, Thomas Hess, and Sarah Jordan, all of whom he alleged purchased Stemulite in California, in reliance on the supposed false advertising, and had not received the purported benefits. Ferrell further claimed that he was acting on behalf of a purported class of similarly-situated persons. In this decision, Ferrell, his clients, and his prospective clients will be collectively referred to as "Ferrell," unless otherwise indicated.

In his demand letters, Ferrell set out what he contended were representative false claims and summarized what he contended constituted violations of the CLRA. Ferrell demanded that Metabolic and GNC cease their false advertising of Stemulite, identify all consumers who purchased Stemulite within the applicable limitations period, and provide each of these consumers with an appropriate refund. In addition, Ferrell demanded that Metabolic and GNC disgorge all revenues from sales of Stemulite for consumers who could

not be identified and implement "an appropriate corrective advertising campaign," including a labeling "disclaimer."

Ferrell concluded the letters with an offer to compromise and allowed Metabolic and GNC thirty days from the date of his letters to agree to an injunction "that include[d] an appropriate disclaimer" in which case, Ferrell agreed to take no further action, except to enforce the injunction. However, if Metabolic and GNC chose not to accept the offer, Ferrell stated that he would file a lawsuit (presumably in California) and seek all available relief.[2]

On November 19, 2009, Metabolic filed a lawsuit in Nevada State Court against Ferrell, his putative class action plaintiffs, and various "Does," all identified as California residents, charging extortion. *See* Nev. Rev. Stat. § 207.470 (allowing treble damages for racketeering in aid of extortion).[3] Metabolic's complaint further charged racketeering based upon multiple publications of the demand letter (to Metabolic, to GNC and to GNC principals), conspiracy to engage in racketeering, civil extortion, tortious interference with contract, and tortious interference with prospective economic relations, i.e., interfering with the agreement between Metabolic and GNC. Metabolic sought declaratory relief and punitive damages. Metabolic's lawsuit directly referenced Ferrell's demand letter, which Metabolic characterized as an accusation of mail fraud, in violation of 18 U.S.C. §§ 1341, 1343. Metabolic, in apparent anticipation of an anti-SLAPP

---

[2]Ferrell did not identify what provisions other than a disclaimer, if any, would have to be included in the stipulated injunction in order to avoid litigation. Metabolic interpreted the letter as requiring inclusion of all of Ferrell's demands in the injunction, which would have, effectively, put it out of business.

[3]Nevada and California define extortion in the same way relevant to this case: a threat to disclose criminal behavior coupled with a demand for compensation to keep quiet. *See Flately v. Mauro*, 139 P.3d 2, 24 & n.16 (Cal. 2006) (citing Cal. Penal Code § 519); Nev. Rev. Stat. § 205.320; *see also* Cal. Penal Code §§ 518-519.

motion by Ferrell, expressly relied upon *Flatley v. Mauro*, which Metabolic characterized as holding that pre-litigation communications are not "privileged" under California's analogous anti-SLAPP statute, if the demands constitute extortion or blackmail as a matter of law.

On December 30, 2009, Ferrell removed the case to the United States District Court for the District of Nevada based on complete diversity of citizenship. Ferrell filed an answer on January 5, 2010, and on January 27, 2010, Ferrell filed a special motion to dismiss based upon Nevada's anti-SLAPP statute. Nev. Rev. Stat. § 41.660; *John*, 219 P.3d at 1280-82.[4]

Metabolic filed a response to Ferrell's special motion to dismiss, and the district court held a hearing on April 21, 2010. At the conclusion of the hearing, the district court denied the motion and directed Metabolic to prepare an appropriate order.

In its order dismissing Ferrell's motion, the district court found that Ferrell had not established that the demand letter to Metabolic constituted a good-faith communication in furtherance of the right to petition because it concluded that Nevada's anti-SLAPP legislation only protected communications made directly to a governmental agency and did not protect a demand letter sent to a potential defendant in litigation. This appeal followed.

## II.   DISCUSSION

**[1]** Our jurisdiction is typically limited to "final decisions." 28 U.S.C. § 1291; *see also In re Korean Air Lines Co.*, 642 F.3d 685, 689 (9th Cir. 2011). Generally, a final judgment is entered at the end of a case, permitting a single appeal to

---

[4]As neither party raised the issue in this appeal, we do not decide whether the Nevada anti-SLAPP statute is available to litigants proceeding in federal court. *Cf. Lockheed Missiles & Space Co.*, 190 F.3d at 970-74.

address all issues. *See Digital Equip. Corp. v. Desktop Direct, Inc.*, 511 U.S. 863, 868 (1994). However, there is a narrow class of decisions—termed collateral orders—that do not terminate the litigation, but must "in the interest of achieving a healthy legal system nonetheless be treated as final." *Id.* at 867 (citation omitted) (internal quotation marks omitted). In *Cohen v. Beneficial Industrial Loan Corp.*, the Supreme Court promulgated the collateral order doctrine, recognizing that such orders should be subject to immediate appeal. 337 U.S. 541, 546 (1949). Whether the district court's order qualifies as an appealable collateral order under *Cohen* will determine our subject-matter jurisdiction. *Digital Equip.,* 511 U.S. at 869 n.3. We consider our jurisdiction de novo. *Andersen v. United States*, 298 F.3d 804, 807 n.2 (9th Cir. 2002).

**[2]** A party pursuing an interlocutory appeal under the collateral order doctrine must show that the order being appealed meets three criteria. It must "[1] conclusively determine the disputed question, [2] resolve an important issue completely separate from the merits of the action, and [3] be effectively unreviewable on appeal from a final judgment." *Will v. Hallock*, 546 U.S. 345, 349 (2006) (internal quotation marks omitted). These requirements are applied strictly, in order to avoid the collateral order doctrine swallowing up the final judgment rule. *See id.* at 350 ("[A]lthough the Court has been asked many times to expand the 'small class' of collaterally appealable orders, we have instead kept it narrow and selective in its membership."); *Digital Equip.*, 511 U.S. at 868 ("[T]he 'narrow' exception should stay that way and never be allowed to swallow the general rule that a party is entitled to a single appeal, to be deferred until final judgment has been entered . . . ." (citation omitted)). Additionally, we do not limit our consideration to the single case before us. We must instead identify the category of cases to which our case belongs and consider a rule that will work for all cases in the category, regardless of whether the order in question is correct. *Digital Equip.*, 511 U.S. at 868 ("[T]he issue of appealability under § 1291 is to be determined for the entire category

to which a claim belongs, without regard to the chance that the litigation at hand might be speeded, or a particular injustice averted by a prompt appellate court decision." (citation omitted) (internal quotation marks omitted)).

Applying this protocol, we must first identify the category of cases which must be considered in determining the need for immediate appeal. It might have been possible to look at all the cases dealing with anti-SLAPP litigation within this circuit as constituting a single "category." Indeed, it appears that all of the anti-SLAPP statutes adopted by the states in the Ninth Circuit have many components in common. However, deeper inspection has persuaded us that, while all of the statutes have common elements, there are significant differences as well, so that each state's statutory scheme must be evaluated separately. Accordingly, we have reached different conclusions with respect to the applicability of the collateral order doctrine after examining Oregon law in *Englert v. Mac-Donell*, 551 F.3d 1099, 1106-07 (9th Cir. 2009) (denying an immediate appeal of an anti-SLAPP motion to dismiss as a collateral order), and California law in *Batzel v. Smith*, 333 F.3d 1018, 1025 (9th Cir. 2003) (granting an immediate appeal of an anti-SLAPP motion to dismiss as a collateral order). Therefore, we consider only whether the denial of a special motion to dismiss brought under Nevada's anti-SLAPP statute qualifies as an immediately appealable order under *Cohen.*

**[3]** Turning to that task, in *Englert* we found it unnecessary to address the first two *Cohen* requirements because the order at issue did not satisfy the third—whether it would be effectively unreviewable on appeal from a final judgment. *ert*, 551 F.3d at 1104; *see Will*, 546 U.S. at 349-55 (declining to review the first and second *Cohen* factors because the third had not been satisfied). The same is true here.

In recent years, the Supreme Court has expanded on how the "effectively unreviewable" prong of the *Cohen* test should

be evaluated. In particular, it has emphasized that "[i]t is not mere avoidance of a trial, but avoidance of a trial that would imperil a substantial public interest, that counts when asking whether an order is 'effectively' unreviewable if review is to be left until later." *Will*, 546 U.S. at 353. In making such an assessment, "the decisive consideration is whether delaying review until the entry of final judgment 'would imperil a substantial public interest' or 'some particular value of a high order.' " *Mohawk Indus. Inc. v. Carpenter*, 130 S. Ct. 599, 601 (2009) (quoting *Will*, 546 U.S. at 352-53).

The risks identified in the context of anti-SLAPP litigation are: 1) there is a danger that men and women will be chilled from exercising their rights to petition the government by fear of the costs and burdens of resulting litigation; and 2) that unscrupulous lawyers and litigants will be encouraged to use meritless lawsuits to discourage the exercise of first amendment rights. *John v. Douglas Cnty. Sch. Dist.*, 219 P.3d 1276, 1282 (Nev. 2009). Immediate appeal is therefore advanced as necessary to prevent the chilling of the right to petition the government and to discourage potential abusers of litigation. As we acknowledged in *Batzel* and *Englert*, and reaffirm here, the right to petition governmental agencies is an important right, established by statute with constitutional underpinnings. The fact, however, that a motion brought pursuant to California's anti-SLAPP statute is immediately appealable in this circuit, while one brought under Oregon's is not, demonstrates that an anti-SLAPP statute does not in and of itself satisfy the collateral order doctrine. In other words, we have recognized that an anti-SLAPP statute's aim of protecting its citizens' First Amendment rights can, in some circumstances, be adequately protected without recourse to immediate appeal.

**[4]** Accordingly, in appraising whether an anti-SLAPP statute satisfies the collateral order doctrine, we have considered whether the values underlying the particular anti-SLAPP statute can be satisfied through the normal appellate process. *See Englert*, 551 F.3d at 1106; *Batzel*, 333 F.3d at 1025. As

a practical matter, this analysis has focused on whether the anti-SLAPP law in question functions as a right not to stand trial, i.e., an immunity from suit. In *Batzel*, we held that the denial of a motion to strike brought pursuant to California's anti-SLAPP statute satisfied the collateral order doctrine because the purpose of the California law was to provide citizens with a substantive immunity from suit. 333 F.3d at 1025-26. In reaching this conclusion, the court relied upon the fact that California's law provided for immediate appeal in state court and legislative history demonstrating that "lawmakers wanted to protect speakers from the trial itself rather than merely from liability." *Id*. at 1025.

In contrast, *Englert* held that Oregon's failure to provide for an immediate appeal indicated its legislature's belief that the normal appeal process was adequate to vindicate the anti-SLAPP right, which it in turn described as "a right to have the legal sufficiency of the evidence underlying the complaint reviewed by a *nisi prius* judge before a defendant is required to undergo the burden and expense of a trial." 551 F.3d at 1105. The *Englert* court explained that "[i]t would simply be anomalous to permit an appeal from an order denying a motion to strike when Oregon was satisfied that the values underlying the remedy could be sufficiently protected by a trial judge's initial review of the motion, followed by appellate review only after a final judgment in favor of the plaintiff."[5] *Id*. at 1105-06.

**[5]** The distinction our anti-SLAPP cases have drawn is consistent with the Supreme Court's command that collateral effect should only be given to those orders that implicate a significant public interest or value. A legislatively approved immunity from trial, as opposed to a mere claim of a right not

---

[5] *Englert* is consistent with the holdings in *Mohawk*, *Will*, and *Digital Equipment* that § 1291 requires courts of appeals to view claims of a "right not to be tried" with "skepticism, if not a jaundiced eye." *Digital Equip.*, 511 U.S. at 873.

to be tried, is imbued with a significant public interest. As the Supreme Court explained in *Digital Equipment Corp.*, "[w]hen a policy is embodied in a constitutional or statutory provision entitling a party to immunity from suit (a rare form of protection), there is little room for the judiciary to gainsay its 'importance.'" 511 U.S. at 879. In line with this principle, we have recently held that "the availability of an [immediate] appeal depends on whether, under *state* law, the immunity functions as an immunity from suit or only as a defense to liability." *Liberal v. Estrada*, 632 F.3d 1064, 1074 (9th Cir. 2011). Our review of Nevada's law satisfies us that, like Oregon's, its underlying values and purpose are satisfied without resort to an immediate appeal because, unlike California's, it does not furnish its citizens with immunity from trial.

**[6]** We turn first to the major distinguishing feature between the Oregon and California laws—the right to an immediate appeal in state court—and find that Nevada's anti-SLAPP statute is more like Oregon's. In Nevada, "where no statutory authority to appeal is granted, no right exists." *Taylor Constr. Co. v. Hilton Hotels Corp.*, 678 P.2d 1152, 1153 (Nev. 1984). Nevada's anti-SLAPP statute does not expressly provide for an immediate right to appeal. It does state, however, that a court shall stay discovery pending "the disposition of any appeal from the ruling on the [special motion to dismiss]." Nev. Rev. Stat. § 41.660(3)(b)(2). We are unpersuaded that the statute's generalized reference to an appeal implicitly, or otherwise, confers an immediate right to appeal. Nevada based its anti-SLAPP statute on California's law, and the legislature could have mirrored California's unequivocal language concerning an immediate right to appeal had it intended to furnish one. *See John*, 219 P.3d at 1281 ("Nevada's anti-SLAPP statute was enacted in 1993, shortly after California adopted its statute, and both statutes are similar in purpose and language."). Furthermore, the California anti-SLAPP statute allows for immediate appeal under California Code of Civil Procedure § 904.1, which lists judgments and orders that are appealable. *See* Cal. Code Civ. Proc.

§ 425.16 ("An order granting or denying a special motion to strike shall be appealable under Section 904.1."). Nevada's counterpart to § 904.1, Nevada Rule of Appellate Procedure 3(b), lists some appealable interlocutory orders but does not mention denial of an order under Nevada Revised Statute § 41.650. We find, therefore, that the statute's mention of "appeal" refers to discretionary writs available under Nevada law, not an appeal of right. *See* Nev. Rev. Stat. § 34.170 (writ of mandamus); Nev. Rev. Stat. § 34.330 (writ of prohibition).[6]

---

[6]In *Henry v. Lake Charles American Press, L.L.C.*, 566 F.3d 164, 178 (5th Cir. 2009), a Fifth Circuit panel addressed a Louisiana anti-SLAPP statute with provisions similar to those discussed in *Batzel* and *Englert*. The panel recognized that the Ninth Circuit placed emphasis on the availability in the relevant legislation of an immediate appeal in state court in deciding whether to grant collateral order status to an order denying an anti-SLAPP motion. *Id.* at 178 n. The court noted that Louisiana, like Oregon, did not provide for an immediate appeal by statute, but concluded that Louisiana appellate courts apparently uniformly and automatically reviewed denials of anti-SLAPP motions under writs of supervision which appear to be similar in purpose to writs of mandamus. *Id.*

If true, the uniform and automatic grant of a writ of supervision might be the equivalent of a right to appeal, because it would operate in every case in the appropriate category, and may raise the risk that failure to grant an immediate appeal in federal court, in every case, might defeat the *Erie* concern about encouraging court shopping. *See Lockheed Missiles & Space Co.*, 190 F.3d at 973 (enforcing California anti-SLAPP provisions in federal court, in part to avoid encouraging shopping for a federal forum). Ferrell has not cited any Nevada case granting a writ of mandamus or prohibition to review denial of an anti-SLAPP motion. As we pointed out in *Englert,* the availability of discretionary writs, as opposed to an appeal as a matter of right, provides no support for an argument that a state statute providing for anti-SLAPP motions to dismiss was intended by the legislature to provide a right not to be tried. *Englert*, 551 F.3d at 1107. The only evidence we have of the views of the Nevada Supreme Court is found in *Wynn Las Vegas, LLC v. Francis*, No. 55459, 2010 WL 3315625 (Nev. June 10, 2010). *Wynn* is an unpublished, non-precedential decision that may not be cited as precedent or legal authority. Nev. Sup. Ct. R. 123. We mention it only because the fact of the decision, without regard to its rationale, proves that Nevada does not uniformly and automatically review denials of anti-SLAPP motions prior to a final judgment. *Henry* is distinguishable on this basis.

**[7]** Further persuading us that the Nevada legislature did not intend for its anti-SLAPP law to function as an immunity from suit is the statute's definition of the anti-SLAPP right. Nevada's law provides that "[a] person who engages in a good faith communication in furtherance of the right to petition is *immune from civil liability* for claims based upon the communication." Nev. Rev. Stat. § 41.650 (emphasis added). We must presume the legislature selected its words with purpose, and immunity from "civil liability" is unquestionably different than immunity from "suit" or "trial." *Liberal*, 632 F.3d at 1074 ("A denial of summary judgment is immediately appealable when the immunity is an immunity from suit, but not when it is a mere defense to liability."). Moreover, in *Englert*, we held that the Oregon anti-SLAPP statute was "not intended to provide a right not to be tried," 551 F.3d at 1105, in spite of the fact that the Oregon law states "[t]he purpose of the procedure established by [Oregon's anti-SLAPP statute] is to provide a defendant with the *right to not proceed to trial* in cases in which the plaintiff does not meet the burden specified in [the statute]." Or. Rev. Stat. § 31.152(4) (emphasis added). If Oregon Revised Statute § 31.152(4) is not sufficient to confer a right not to be tried, then Nevada Revised Statute § 41.650, which provides only immunity from *liability*, certainly is not.

Finally, we note that in the run of the mill of anti-SLAPP cases, prompt review by a district judge will provide adequate protection against frivolous cases brought to chill the exercise of rights. Generally, a trial judge faced with an anti-SLAPP motion will decide it using "the routine application of settled legal principles." *Mohawk Indus.*, 130 S. Ct. 607. In the rare case where the district court erroneously denies such a special motion to dismiss, Nevada has provided substantial protections through the award of costs and attorneys' fees to make the litigant whole after she prevails on the appeal from a final judgment and has, in addition, given her the option to pursue the unscrupulous litigator with an action for damages.[7] *See*

---

[7]We also note that Federal Rule of Civil Procedure 11 authorizes a district court to impose sanctions on attorneys and parties who bring frivo-

Nev. Rev. Stat. § 41.670. This further satisfies us that "the class of claims, taken as a whole, can be adequately vindicated by other means." *Mohawk Indus.*, 130 S. Ct. at 601.

**[8]** Accordingly, the absence of an immediate appeal provision, coupled with the law's use of the phrase "immunity from civil liability" and provision of other safeguards, including attorneys' fees, leads us to conclude that Nevada's anti-SLAPP statute is similar to the Oregon statute we addressed in *Englert*. Like the Oregon law, it appears to be a mechanism that allows a citizen to obtain prompt review of potential SLAPP lawsuits and have them dismissed before she is forced to endure the burdens and expense of the normal litigation process, not an immunity to suit or right not to be tried. Therefore, we hold that the denial of a pretrial special motion to dismiss under Nevada's anti-SLAPP statute does not satisfy the third prong of the collateral order doctrine and is not, therefore, immediately appealable.

**[9]** Finally, we should not leave this issue without noting *Mohawk*'s directive that we consider alternates to an immediate appeal in connection with the *Cohen* rule. *Mohawk Indus.*, 130 S. Ct. at 607-09. If prompt review by an experienced trial judge will correctly resolve the run of the mill anti-SLAPP motions, there are two remedies apart from collateral order appeal available to enable an appellate court to address particularly injurious or novel issues. First, a litigant in federal court may ask the district court to certify and the court of appeals to accept an interlocutory appeal pursuant to 28 U.S.C. § 1292(b) as involving controlling questions of law the resolution of which will speed the termination of the litiga-

---

lous lawsuits in bad faith and for ulterior purposes. Nevada has similar provisions. *See*, *e.g.*, Nev. R. Civ. P. 11; *see also Chambers v. NASCO, Inc.*, 501 U.S. 32 (1991) (discussing at length the many arrows in the district court's quiver of statutes, rules and inherent power available to punish bad faith litigation tactics).

tion. Secondly, in truly extraordinary cases, a writ of mandamus is available. 28 U.S.C. § 1651(a) (the All Writs Act codifying the common law writ of mandamus); *Cheney v. U.S. Dist. Court for the Dist. of Columbia*, 542 U.S. 367, 377 (2004). We have had recourse to the writ of mandamus to protect first amendment rights where we feared that the *Mohawk* decision foreclosed collateral order appeals. *See Perry v. Schwarzenegger*, 591 F.3d 1147, 1154-56 (9th Cir. 2010). Ferrell did not seek to avail himself of 28 U.S.C. § 1292(b), nor did he seek mandamus in this Court. We, therefore, express no opinion on how we might have decided such an appeal or application had one been brought. We conclude that an immediate appeal is not necessary to protect the rights in Nevada Revised Statute § 41.660.

## III.   CONCLUSION

We are satisfied that the order in this case was not a collateral order justifying an immediate appeal.

**DISMISSED.**