**133 Nev., Advance Opinion 42**

# IN THE SUPREME COURT OF THE STATE OF NEVADA

RAYMOND DELUCCHI; AND TOMMY HOLLIS,
Appellants,
vs.
PAT SONGER,
Respondent.

No. 68994



FILED

JUN 29 2017

ELIZABETH A. BROWN
CLERK OF SUPREME COURT
BY_____
CHIEF DEPUTY CLERK

Appeal from a final judgment granting a special motion to dismiss in a tort action. Fifth Judicial District Court, Nye County; Kimberly A. Wanker, Judge.

*Reversed and remanded with instructions.*

Law Office of Daniel Marks and Adam Levine and Daniel Marks, Las Vegas,
for Appellants.

Lipson, Neilson, Cole, Seltzer & Garin, P.C., and Joseph Garin and Siria L. Gutierrez, Las Vegas,
for Respondent.

BEFORE THE COURT EN BANC.

*OPINION*

By the Court, HARDESTY, J.:

In this appeal, we address whether the 2013 amendments to Nevada's anti-SLAPP statutes clarified, rather than substantively altered,

existing law, such that they may apply retroactively in resolving a special motion to dismiss a defamation action grounded on a pre-2013 communication. Because portions of the applicable 2013 amendments (defining protected conduct) are consistent with a reasonable interpretation of the prior anti-SLAPP enactment, and those portions resolved an ambiguity that existed in the prior enactment, they are clarifying and thus apply retroactively. However, because the remaining applicable portions of the 2013 amendments (changing the summary judgment standard of review to clear and convincing) effected a substantive change in the prior anti-SLAPP legislation, those portions are not applicable retroactively. Therefore, although we conclude that in resolving respondent's special motion to dismiss, the district court properly applied the 2013 clarifying portions of the amendments in determining that respondent's communication to the town of Pahrump is potentially protected, the district court erred in applying the remaining substantive portions of the 2013 amendments retroactively in determining that appellants failed to meet the high burden set forth in the 2013 amendments of establishing a probability of prevailing on their claims. We thus reverse and remand.

## FACTS AND PROCEDURAL HISTORY

In May 2012, Pahrump Valley Fire and Rescue Service (PVFRS) paramedics Raymond Delucchi and Tommy Hollis were involved in an incident on Highway 160 (the incident). Delucchi and Hollis were driving their ambulance to Pahrump when they were flagged down by passing motorists later identified as James and Brittnie Choyce. The Choyces stopped Delucchi and Hollis because Brittnie had miscarried and James requested transport to a hospital in Las Vegas. For reasons that are still in dispute, Delucchi and Hollis never transported Brittnie to Las

Vegas or any other hospital. Following the incident, PVFRS Lieutenant Steve Moody and Fire Chief Scott Lewis received a telephone complaint from the Choyce family regarding the incident and began an internal investigation.

In June 2012, the town of Pahrump (the Town), through its outside counsel, the law firm of Erickson, Thorpe, & Swainston, Ltd. (ETS), retained Pat Songer, Director of Emergency Services at Humboldt General Hospital, to conduct a third-party investigation of the incident. During his investigation, Songer reviewed notes of the telephone complaint from the Choyce family, reviewed notes of interviews conducted by Chief Lewis and Lt. Moody, conducted interviews, and collected other evidence. Based on his investigation, Songer prepared a report (the Songer Report) including his findings, conclusions, and recommendations to the Town regarding Delucchi and Hollis. In his report, Songer concluded that Delucchi and Hollis violated several sections of the Town's Personnel Policies, the PVFRS Rules and Regulations, and the PVFRS Emergency Medical Service Protocols. Based on those findings, Songer recommended that Delucchi and Hollis be terminated. On September 18, 2012, Delucchi and Hollis were notified in writing of the Town's intent to terminate their employment based on the findings within the Songer Report.

Delucchi, Hollis, and their union challenged the termination at a four-day arbitration hearing pursuant to their collective bargaining agreement. After the hearing, the arbitrator issued an opinion and award finding that there was not just cause for Delucchi's and Hollis's terminations and ordering reinstatement. Based on testimony at the hearing, and upon review of the evidence presented, the arbitrator

concluded that the Songer Report lacked reliability, contained misrepresentations, and was not an adequate basis for termination.

In June 2014, Delucchi and Hollis filed a complaint in district court against Songer and ETS[1] alleging defamation and intentional infliction of emotional distress (IIED) based on the investigation commissioned by the Town and the Songer Report. Following Delucchi's and Hollis's complaint, Songer filed a special motion to dismiss pursuant to Nevada's anti-SLAPP statutes. In opposition to Songer's special motion, Delucchi and Hollis argued that (1) the Songer Report was unprotected conduct under Nevada's anti-SLAPP statutes; (2) under the pre-2013 version of the anti-SLAPP statute, Delucchi and Hollis demonstrated a genuine issue of material fact to defeat the motion; and (3) while the pre-2013 version should apply to Songer's 2012 conduct, they could nevertheless demonstrate by clear and convincing evidence a probability of prevailing on their claims.

The district court interpreted the 2013 amendments to Nevada's anti-SLAPP statutes as clarifying the legislative intent, and it thus applied the 2013 statutory amendments retroactively in deciding Songer's special motion to dismiss. In analyzing the special motion to dismiss under the 2013 version of NRS 41.660(3)(a), the district court recognized that the 2013 statutes required a two-step analysis, which requires the defendant to demonstrate that the communication was protected, and if so demonstrated, the burden shifts to the plaintiffs to show a probability of prevailing on their claims. Under that framework, the district court found that Songer demonstrated by a preponderance of

---

[1]ETS is no longer a party to this action.

the evidence that his report was protected good faith communication in furtherance of the right to free speech on an issue of public concern under Nevada's anti-SLAPP statutes because (1) it was a communication of information to Pahrump regarding a matter reasonably of concern to Pahrump based on the incident, and (2) it was a written statement made in direct connection with an issue under consideration by Pahrump authorized by law in the disciplinary actions against Delucchi and Hollis. *See* 2013 Nev. Stat., ch. 176, §§ 1 and 3. Moving to the second step, the district court found that Delucchi and Hollis failed to establish a probability of prevailing on the defamation and IIED claims by clear and convincing evidence such that the special motion could be defeated. *See id.* § 3(3)(b), 623-24.[2] Based on these findings, the district court granted Songer's special motion to dismiss. This appeal followed.

## DISCUSSION

Nevada's anti-SLAPP statutes, codified in NRS Chapter 41, were amended in 2013 and became effective on October 1, 2013. *See* 2013 Nev. Stat., ch. 176, §§ 1-4. The incident giving rise to this appeal occurred in May 2012, the Town retained Songer in June 2012, and Delucchi and Hollis were notified of the Town's intent to terminate in September 2012. Thus, all of the conduct relevant to our anti-SLAPP analysis occurred in the 2012 calendar year. However, the district court retroactively applied the 2013 amendments as a whole in deciding whether to grant Songer's

---

[2]NRS 41.660(3)(b) was amended again in 2015, and under that amendment, a plaintiff must demonstrate "with prima facie evidence a probability of prevailing on the claim." However, under the 2013 version, a plaintiff had to establish "by clear and convincing evidence a probability of prevailing on the claim." 2013 Nev. Stat., ch. 176.

special motion to dismiss based on its determination that the amendments were meant to clarify the legislative intent behind Nevada's anti-SLAPP statutes. In resolving this appeal, we must first determine whether the 2013 amendments apply retroactively or whether the pre-2013 version of Nevada's anti-SLAPP statutes applied to the facts of this case. Specific to the issues presented in this appeal are the amendments to NRS 41.637 and NRS 41.660. After determining that portions of the 2013 amendments applied to this case, we then address whether the communication at issue is protected under the applicable versions of Nevada's anti-SLAPP statutes.

*Legislative amendments to Nevada's anti-SLAPP statutes*

When the Legislature amends a statute, "[t]here is a general presumption in favor of prospective application." *See McKellar v. McKellar*, 110 Nev. 200, 203, 871 P.2d 296, 298 (1994). When an amendment clarifies, rather than substantively changes a prior statute, the amendment has retroactive effect. *Fernandez v. Fernandez*, 126 Nev. 28, 35 n.6, 222 P.3d 1031, 1035 n.6 (2010); *see also In re Estate of Thomas*, 116 Nev. 492, 495, 998 P.2d 560, 562 (2000) (explaining that "[w]here a former statute is amended, or a doubtful interpretation of a former statute rendered certain by subsequent legislation, it has been held that such amendment is persuasive evidence of what the Legislature intended by the first statute" (alteration in original) (quoting *Sheriff, Washoe Cty. v. Smith*, 91 Nev. 729, 734, 542 P.2d 440, 443 (1975)); 1A Norman J. Singer & J.D. Shambie Singer, Sutherland Statutory Construction § 22.34 (7th ed. 2009) ("Where an amendment clarifies existing law but does not contravene previous constructions of the law, the amendment may be deemed curative, remedial and retroactive, especially where the

amendment is enacted during a controversy over the meaning of the law.").

> The pre-2013 version of NRS 41.637 provided:
>
> Good faith communication in furtherance of the right to petition means any:
>
> > 1. Communication that is aimed at procuring any governmental or electoral action, result or outcome;
> >
> > 2. Communication of information or a complaint to a Legislator, officer or employee of the Federal Government, this state or a political subdivision of this state, regarding a matter reasonably of concern to the respective governmental entity; or
> >
> > 3. Written or oral statement made in direct connection with an issue under consideration by a legislative, executive or judicial body, or any other official proceeding authorized by law,
>
> which is truthful or is made without knowledge of its falsehood.

NRS 41.637 (1997). Under the 2013 amendments, the Legislature amended NRS 41.637 to add the phrase "or the right to free speech in direct connection with an issue of public concern" to the phrase that statute defines. 2013 Nev. Stat., ch. 176, § 1, at 622. The Legislature also added subsection (4) to NRS 41.637, which provides that "good faith communication in furtherance of the right to petition or the right to free speech in direct connection with an issue of public concern" includes "[c]ommunication made in direct connection with an issue of public interest in a place open to the public or in a public forum." *Id.*

The pre-2013 version of NRS 41.660 provided that special motions under Nevada's anti-SLAPP statutes were treated as motions for summary judgment. NRS 41.660 (1997). However, under the 2013

amendments, when a party filed a special motion under the anti-SLAPP statutes, the court would begin its analysis by "[d]etermin[ing] whether the moving party has established, by a preponderance of the evidence, that the claim is based upon a good faith communication in furtherance of the right to petition or the right to free speech in direct connection with an issue of public concern." NRS 41.660(3)(a) (2013); 2013 Nev. Stat., ch. 176, § 3, at 622. We turn now to the legislative history of those amendments in order to determine whether those amendments clarified, or substantively changed, the law.

Legislative history indicates that the 2013 amendments to Nevada's anti-SLAPP statutes were prompted by a ruling from the Ninth Circuit Court of Appeals in *Metabolic Research, Inc. v. Ferrell*, 693 F.3d 795 (9th Cir. 2012). *See* Hearing on S.B. 286 Before the Assembly Judiciary Comm., 77th Leg. (Nev., May 6, 2013) (Statement of Senator Justin C. Jones explaining that he introduced the 2013 amendments to resolve limitations on NRS Chapter 41 imposed by the Ninth Circuit Court of Appeals in its *Metabolic Research* decision). In *Metabolic Research*, the court held that Nevada's anti-SLAPP provisions only protect communications made directly to a governmental agency, and only protected defendants from liability, not from suit, and that there was no right to an immediate appeal from an order denying a special motion to dismiss. 693 F.3d at 800-02.

In response to the *Metabolic Research* holding, the Legislature amended Nevada's anti-SLAPP statutes in 2013. One of those amendments clarified that, under NRS 41.637, the scope of the anti-SLAPP protections is not limited to a communication made directly to a

governmental agency.[3] *See* 2013 Nev. Stat., ch. 176, § 1, at 623. Indeed, the Legislature set out to cure the limitation that the Ninth Circuit erroneously read into NRS 41.637 because "the Ninth Circuit [c]ourt has said that [Nevada's anti-SLAPP law] does not protect people in the way that it should, and that is what this bill [was] trying to address." *See* Hearing on S.B. 286 Before the Assembly Judiciary Comm., 77th Leg. (Nev., May 6, 2013) (Statement of Senator Justin C. Jones). The Legislature's purpose in revisiting NRS 41.637 and the language of the amendment itself "clearly, strongly, and imperatively . . . [shows] that the [L]egislature intended the statute to be retrospective in its operation." *In re Estate of Thomas*, 116 Nev. at 495-96, 998 P.2d at 562. We thus conclude that this amendment to NRS 41.637 was meant to clarify legislative intent in response to *Metabolic Research*, and thus, retroactive application of that statute is proper. *See McKellar*, 110 Nev. at 203, 871 P.2d at 298.

The Legislature also reexamined NRS 41.660 in 2013. As noted above, before the 2013 amendments, the district court was to treat a special motion to dismiss pursuant to the anti-SLAPP statutes as a motion for summary judgment. NRS 41.660(3)(a) (1997); *see also John v. Douglas Cty. Sch. Dist.*, 125 Nev. 746, 753, 219 P.3d 1276, 1281 (2009), *superseded by statute as stated in Shapiro v. Welt*, 133 Nev., Adv. Op. 6, 389 P.3d 262, 266 (2017). Therefore, before the 2013 amendments to the anti-SLAPP statutes, the party filing a special motion to dismiss had the "initial

---

[3]The Legislature also clarified that under NRS 41.670(4), there is an immediate appeal from a denial of a special motion to dismiss a SLAPP suit, and this court has jurisdiction to hear these appeals, *see* 2013 Nev. Stat., ch. 176, § 4, at 624.

burden of production and persuasion. This means the moving party must first make a threshold showing that the lawsuit is based on" a protected communication pursuant to NRS 41.637. *John*, 125 Nev. at 754, 219 P.3d at 1282. "If the moving party satisfies this threshold showing, then the burden of production shifts to the nonmoving party, who must demonstrate a genuine issue of material fact." *Id.*

As part of the 2013 amendments, the Legislature made a substantive change to the manner in which courts consider anti-SLAPP special motions to dismiss. Under the 2013 amendments, a court must first "[d]etermine whether the moving party has established, by a preponderance of the evidence, that the claim is based upon a good faith communication in furtherance of the right to petition or the right to free speech in direct connection with an issue of public concern." NRS 41.660(3)(a) (2013); 2013 Nev. Stat., ch. 176 § 3(3)(a). "If the court determines that the moving party has met the burden pursuant to paragraph (a), [the court must] determine whether the plaintiff has established by clear and convincing evidence a probability of prevailing on the claim."[4] NRS 41.660(3)(b) (2013); 2013 Nev. Stat., ch. 176 § 3(3)(b). If the district court determines that the plaintiff has shown by clear and convincing evidence a likelihood of succeeding on the merits, the determination on the special motion has no effect on the remainder of the proceedings. NRS 41.660(3)(c)(1)-(2); 2013 Nev. Stat., ch. 176 § (3)(c)(1)-(2).

---

[4]The standard of proof the plaintiff must demonstrate has since been amended as noted *supra* note 2.

We cannot say that the Legislature's 2013 amendment to NRS 41.660 is "persuasive evidence of what the Legislature intended by the first statute." *In re Estate of Thomas*, 116 Nev. at 495, 998 P.2d at 562. The 2013 amendment completely changed the standard of review for a special motion to dismiss by placing a significantly different burden of proof on the parties. Furthermore, the legislative history shows that the Legislature knew it was making a substantive change to the law, and there was no conflict as to a questionable interpretation of NRS 41.660 at the time of the 2013 amendment. *See* Hearing on S.B. 286 Before the Assembly Judiciary Comm., 77th Leg. (Nev., March 28, 2013). Thus, we conclude that the 2013 amendments to NRS 41.660 were a substantive change in the law such that retroactive application is improper. Accordingly, we conclude that the district court erred by requiring that Delucchi and Hollis establish a probability of prevailing on the defamation and IIED claims by clear and convincing evidence based on the 2013 version of NRS 41.660.

Having determined the applicable statutes, we now turn to the application of each to this case in reviewing the district court's holdings.

*The Songer Report was not a protected communication*

"[I]ssues of statutory construction are questions of law reviewed de novo." *Simmons v. Briones*, 133 Nev., Adv. Op. 9, 390 P.3d 641, 643 (2017). When the language of a statute is unambiguous, this court will give that language its plain and ordinary meaning and not go beyond it. *Id.* at 644. "A statute's express definition of a term controls the construction of that term no matter where the term appears in the statute." *Nev. Pub. Emps. Ret. Bd. v. Smith*, 129 Nev. 682, 627, 310 P.3d 560, 566 (2013) (quoting *Williams v. Clark Cty. Dist. Attorney*, 118 Nev. 473, 485, 50 P.3d 536, 544 (2002)).

SUPREME COURT
OF
NEVADA

(O) 1947A

As amended in 2013, NRS 41.637 provides:

Good faith communication in furtherance of the right to petition or the right to free speech in direct connection with an issue of public concern means any:

1. Communication that is aimed at procuring any governmental or electoral action, result or outcome;

2. Communication of information or a complaint to a Legislator, officer or employee of the Federal Government, this state or a political subdivision of this state, regarding a matter reasonably of concern to the respective governmental entity;

3. Written or oral statement made in direct connection with an issue under consideration by a legislative, executive or judicial body, or any other official proceeding authorized by law; or

4. Communication made in direct connection with an issue of public interest in a place open to the public or in a public forum,

which is truthful or is made without knowledge of its falsehood.

Delucchi and Hollis argue that the district court erred in granting Songer's motion because Songer created the Songer Report pursuant to an employment contract with the Town, not "in furtherance of the right to petition or the right to free speech." NRS 41.637. Thus, Delucchi and Hollis argue that the Songer Report was not protected communication under Nevada's anti-SLAPP statutes because Songer's conduct was not in furtherance of his First Amendment rights of free speech or petition. Songer contends that NRS 41.637's language that "[g]ood faith communication in furtherance of the right to petition or the right to free speech in direct connection with an issue of public concern" is

SUPREME COURT
OF
NEVADA

(O) 1947A

12

expressly defined by statute, and the Songer Report falls within that statutory definition.

In reviewing Nevada's anti-SLAPP statutes, this court has recognized that "good faith communication in furtherance of the right to petition or the right to free speech in direct connection with an issue of public concern" is a phrase that "is explicitly defined by statute in NRS 41.637." *Shapiro v. Welt*, 133 Nev., Adv. Op. 6, 389 P.3d 262, 267 (2017). In *Shapiro*, the petitioners challenged the constitutionality of NRS 41.637, arguing that the term "good faith" rendered the statute unconstitutionally vague. *Id.* at 266. This court "conclude[d] that the term 'good faith' does not operate independently within the anti-SLAPP statute. Rather, it is part of the phrase 'good faith communication in furtherance of the right to petition or the right to free speech in direct connection with an issue of public concern.'" *Id.* at 267.

Consistent with our holding in *Shapiro*, we conclude that the term "in furtherance of the right to petition or the right to free speech" does not operate independently within the anti-SLAPP statute. It too is part of the phrase "good faith communication in furtherance of the right to petition or the right to free speech in direct connection with an issue of public concern," which must be given its express definition as provided in NRS 41.637. *See Nev. Pub. Emps. Ret. Bd.*, 129 Nev. at 627, 310 P.3d at 566.

Interestingly, the Supreme Court of California recently decided a case involving an interpretation of its own anti-SLAPP statute, which we have previously recognized as "similar in purpose and language" to our anti-SLAPP statute. *Shapiro*, 133 Nev., Adv. Op. 6, 389 P.3d at 268 (internal quotation marks omitted). In *City of Montebello v. Vasquez*, the

SUPREME COURT
OF
NEVADA

(O) 1947A

Supreme Court of California reviewed a lower court's denial of an anti-SLAPP motion because the communication did not implicate First Amendment rights. 376 P.3d 624, 632 (Cal. 2016). The *Vasquez* court disagreed, stating that "[t]he Legislature did not limit the scope of the anti-SLAPP statute to activity protected by the constitutional rights of speech and petition." *Id.* The court reasoned that

> [t]he Legislature spelled out the kinds of activity it meant to protect in [the applicable section of California's anti-SLAPP statutes]: "As used in this section, 'act in furtherance of a person's right of petition or free speech under the United States or California Constitution in connection with a public issue' includes: (1) any written or oral statement or writing made before a legislative, executive, or judicial proceeding, or any other official proceeding authorized by law, (2) any written or oral statement or writing made in connection with an issue under consideration or review by a legislative, executive, or judicial body, or any other official proceeding authorized by law, (3) any written or oral statement or writing made in a place open to the public or a public forum in connection with an issue of public interest, or (4) any other conduct in furtherance of the exercise of the constitutional right of petition or the constitutional right of free speech in connection with a public issue or an issue of public interest."

*Id.* (quoting Cal. Civ. Proc. Code § 425.16(e) (West 2016)).

The court explained that "courts determining whether conduct is protected under the anti-SLAPP statute look not to First Amendment law, but to the statutory definitions" within California's anti-SLAPP statutes. *Id.* at 633. And "courts determining whether a cause of action arises from protected activity are not required to wrestle with difficult questions of constitutional law." *Id.* Thus, a defendant establishes that he

Supreme Court
of
Nevada

(O) 1947A

14

or she has engaged in protected conduct when that "defendant's conduct . . . falls within one of the four categories . . . defining [the statutory] phrase, 'act in furtherance of a person's right of petition or free speech under the United States or California Constitution in connection with a public issue.'" *Id.* (first alteration in original) (quoting Cal. Civ. Proc. Code § 425.16(e) (West 2016)).

We find the Supreme Court of California's rationale persuasive and consistent with our own anti-SLAPP caselaw. Thus, we conclude that a defendant's conduct constitutes "good faith communication in furtherance of the right to petition or the right to free speech in direct connection with an issue of public concern" if it falls within one of the four categories enumerated in NRS 41.637 and "is truthful or is made without knowledge of its falsehood."

Here, the district court concluded that the Songer Report was a protected communication under NRS 41.637(2). However, the district court incorrectly applied the standard set forth in the 2013 amendments to NRS 41.660, concluding that Songer met his burden of establishing by a preponderance of the evidence that the Songer Report was protected communication. The correct inquiry is whether Songer's special motion should have been granted under the summary judgment-based standard under the pre-2013 version of NRS 41.660.

Under the pre-2013 version of NRS 41.660, Songer made his initial threshold showing that his report was a "good faith communication in furtherance of the right to petition or the right to free speech in direct connection with an issue of public concern." Specifically, Songer initially showed that the Songer Report was a "[c]ommunication of information or a complaint to a Legislator, officer or employee of the Federal Government,

 

this state or a political subdivision of this state, regarding a matter reasonably of concern to the respective governmental entity" pursuant to NRS 41.637(2). The incident was a matter reasonably of concern to the Town, as it received a complaint from citizens that emergency protocols were not followed, and the Town retained ETS to conduct an independent investigation into that complaint and then followed Songer's recommendations to terminate Delucchi and Hollis.

Songer also made an initial showing that the Songer Report was true or made without knowledge of its falsehood. In a declaration before the district court, Songer stated, "[t]he information contained in [his] reports was truthful to the best of [his] knowledge, and [he] made no statements [he] knew to be false." Because Songer made the required initial showing, the question becomes whether in opposing the special motion to dismiss, Delucchi and Hollis set forth specific facts by affidavit or otherwise to show that there was a genuine issue for trial regarding whether the Songer Report fit within the definition of protected communication. *Wood*, 121 Nev. at 729, 121 P.3d at 1031 (explaining that the substantive law controls which factual disputes are material and will thus preclude summary judgment).

We conclude that Delucchi and Hollis presented sufficient evidence to defeat Songer's special motion under the summary judgment standard. In opposing Songer's special motion to dismiss, Delucchi and Hollis presented the arbitrator's findings as well as testimony offered at the arbitration hearings. The arbitrator concluded that the Songer Report was not created in a reliable manner and contained misrepresentations. The arbitrator's determination was based on the evidence presented at the hearing, which included testimony from Songer. Delucchi and Hollis thus

presented facts material under the substantive law and created a genuine issue for trial regarding whether the Songer Report was true or made with knowledge of its falsehood. *See City of Montebello v. Vasquez*, 376 P.3d at 633 (providing that the substantive law in deciding whether a communication is protected is the definition of protected communication contained in the anti-SLAPP legislation). We thus conclude that the district court erred in granting Songer's special motion to dismiss.

## CONCLUSION

We conclude that the 2013 amendments to NRS 41.637 were meant to clarify legislative intent, thus making retroactive application of the statute's amendments proper. However, having concluded that the 2013 amendments to NRS 41.660 were a change in the law such that retroactive application is improper, we conclude that the district court erred in requiring Delucchi and Hollis to establish a probability of prevailing on the defamation and IIED claims by clear and convincing evidence based on the 2013 version of NRS 41.660. We further conclude that Delucchi and Hollis presented sufficient evidence to create a genuine issue of material fact, and the district court erred in granting Songer's special motion to dismiss. We thus reverse the district court's order

granting Songer's special motion, and remand this matter to the district court and instruct the court to enter an order denying Songer's special motion to dismiss.

_____, J.
Hardesty

We concur:

_____, C.J.
Cherry

_____, J.
Douglas

_____, J.
Gibbons

_____, J.
Pickering

_____, J.
Parraguirre

_____, J.
Stiglich

SUPREME COURT
OF
NEVADA

(O) 1947A